H. R. DECKER v. JOHN A. KIRLICKS ET AL.

No. 3189.    Decided November 12, 1919.

(216 S. W., 385.)

1.—Instructions to Juries—Exceptions—Peremptory Charge.

The peremptory direction of a verdict by charge of the court was subject to challenge on appeal though not objected to on the trial before it was read to the jury. Walker v. Haley, *ante*, p. 50. (P. 93.)

**2.—Forfeiture—Ambiguous Contract.**

A provision in a contract for forfeiture of rights thereunder should be plain and clear. If ambiguous, that alone condemns it. See contract held so uncertain as not to support a forfeiture of rights under its terms, the meaning of which should not be left to the jury. Benavides v. Hunt, 79 Texas, 383, followed. (P. 94.)

**3—Supreme Court—Jurisdiction—Error Important to Jurisprudence of State.**

Article 1521, subd. 6, Rev. Stats., as amended by Ch. 75, Acts of 1917 (Act of March 15, 1917 Laws, 35th Leg. p. 140) confers jurisdiction on the Supreme Court in case of a ruling which constitutes "an error of law of such importance to the jurisprudence of the State as in the opinion of the Supreme Court requires correction," thus limiting the jurisdiction formerly conferred, where the appellate court "has erroneously declared the substantative law of the case." A ruling which would now confer jurisdiction must constitute a serious departure from the established law or introduce a doctrine violative of fundamental principles. (Pp. 95, 96.)

**4.—Same.**

A ruling by the appellate court that the evidence was such as to warrant the submission of a given issue to the jury, or one that there was no evidence to warrant such submission, could not be regarded as one of such importance to the jurisprudence of the State as to require correction, within the meaning of amended article 1521, subd. 6, unless flagrantly wrong. See rulings on sufficiency of evidence to demand submission of the issue of forfeiture held, if erroneous at all, not so clearly wrong as to justify the Supreme Court in assuming jurisdiction to correct them. (HAWKINS, J., dissents). (P. 96.)

**5.—Dissenting Opinion.**

Mr. Justice Hawkins, concurring otherwise in the rulings of the majority, is of opinion that an erroneous ruling by a Court of Civil Appeals that a given issue is, or is not, supported by some evidence, and accordingly should, or should not, have been submitted to the jury, should be treated by the Supreme Court as being, in and of itself, of such importance to the jurisprudence of the State as to require correction. (Pp. 96, 97.)

Error to the Court of Civil Appeals for the First District, in an appeal from Harris County.

Writ of error was obtained by Decker on a judgment of the Court of Civil Appeals reversing and remanding to the trial court. Kirlicks v. Texas Co., 201 S. W., 687.

*Carothers & Brown,* for plaintiff in error.—All objections to the court's charge which are not presented to the court before the charge is read to the jury are waived. Railway Co. v. Wheat, 173 S. W., 974; Needham v. Cooney, 173 S. W., 979; Railway Co. v. Feldman, 170 S. W., 133; Case v. Folsom, 170 S. W., 1066; Bohn v. Burton-Lingo Co., 175 S. W., 173; Wickiser v. Williams, 173 S. W., 288; Railway Co. v. Wilson, 176 S. W., 619; Denison Cotton Mill Co. v. McAmis, 176 S. W., 621; Railway Co. v. Barnes, 168 S. W., 991; Elser v. Putnam Land & Dev. Co., 171 S. W., 1052; Hendrick v. Blount-Decker Lumb. Co., 200 S. W., 171; Byrne v.

Texas L. & L. Co., 198 S. W., 600; Rockhill Club v. Mix, 198 S. W., 156; Stevens v. Gustine Merc. Co., 197 S. W., 1127; Heidenheimer v. Railway Co., 197 S. W., 887; Thorne v. Daniel, 189 S. W., 986; Carr v. Bank, 189 S. W., 988; Huling v. Moore, 194 S. W., 194.

Since Decker's lease specified the number of wells to be drilled by him and fixed that number at five or six, and provided that he should have the exclusive right to exploit the land for ten years, it was error to hold that the trial court should have submitted to the jury the question as to whether or not there had been a partial forfeiture of Decker's lease by reason of his failure to drill nineteen or twenty wells, the undisputed evidence showing that he had drilled the number of wells called for. O'Neil v. Sun Co., 123 S. W., 174; McAfee v. Grubb, 164 S. W., 925; Fisher v. Crescent Oil Co., 178 S. W., 906; Benavides v. Hunt, 15 S. W., 399.

If the seventh paragraph of Decker's lease is ambiguous and susceptible of two different constructions, as found by the Court of Civil Appeals, there should be no forfeiture if the lessee has complied with the lease as he construed it, if the lease is susceptible of the construction which he placed upon it. Hill v. Still, 19 Texas, 84; Railway Co. v. Keller, 90 Texas, 222.

A provision for forfeiture of an undefined portion of a tract of land is too indefinite to be enforced. Parsons & S. Oil Co. v. McCormick, 70 S. E., 37; Slade v. Illinois Coal Co., 90 N. E., 632; Jones v. Mount, 74 N. E., 1032.

As there was no ambiguity in the written contract, it was error to hold that the construction of this contract was for the jury. Summers v. Mills, 21 Texas, 91; Whitaker v. Bledsoe, 34 Texas, 402; Vineyard v. Smith, 34 Texas, 457; Soell v. Hadden, 85 Texas, 187; Tinsley v. Tenniman, 34 S. W., 365; Railway Co. v. Malone, 25 S. W., 1077; Lary v. Young, 27 S. W., 910.

*McMeans, Garrison & Pollard,* for defendants in error.—The court is authorized to take the case from the jury only when the evidence is of such a conclusive character that there is no room for ordinary minds to differ in the conclusions to be drawn from it. Walker v. Finney, 157 S. W., 948; Carter v. South Texas Lumber Yard, 160 S. W., 626; I. & G. N. Ry. Co. v. Williams, 160 S. W., 639; Zimmerman v Bough, 161 S. W., 943.

The undisputed evidence shows that the land leased to the defendant in error contained about 20 acres of land; that it was laid off in a long, narrow strip, in blocks of one acre each; that defendant in error, H. R. Decker, had failed and refused to bore any well or wells upon said tract of land, except upon acres Nos. 13 and 14, and the refusal to bore same under the terms of the lease, would work a forfeiture upon the remaining acres of the land leased, except such acre upon which wells were bored.

The lease providing that the failure to operate a well which had been drilled and was producing oil for a period of more than thirty days would work a forfeiture. upon the acre upon which such well was located, and this issue having been raised by the pleadings and the evidence, plaintiffs in error were entitled to have this issue submitted to the jury. Foster v. Elk Fork Oil & Gas Co., 90 Fed., 178; Huggins v. Daley, 99 Fed., 606; National Oil & Pipe Line Co. v. Teel, 67 S. W., 545; Emery v. League, 72 S. W., 603; Hodges v. Bruce, 74 S. W., 590; Guffey Petroleum Company v. J. Chaison Townsite Co., 107 S. W., 609; Benavides et al. v. Hunt, 15 S. W., 396; Guffey Pet. Co. v. Oliver, 79 S. W., 884.

MR. CHIEF JUSTICE PHILLIPS delivered the opinion of the court.

The suit was by H. R. Decker against John A. Kirlicks to quiet the rights of Decker under an oil lease granted by Kirlicks and others, and to recover from the Texas Company the purchase price of certain oil from wells developed under the lease to which Kirlicks and others were asserting an adverse claim. The Texas Company declared its willingness to pay the amount due for the oil to the rightful owner, and impleaded other parties. Some of these joined with Kirlicks in a plea that Decker had forfeited his rights under the lease. Upon the trial a verdict for Decker was directed. The honorable Court of Civil Appeals reversed the judgment and. remanded the cause.

The ruling of the Court of Civil Appeals that under the Act of 1913 the peremptory direction of the verdict was subject to challenge on the appeal, though not objected to in the trial court before read to the jury, presented a conflict with decisions of other Courts of Civil Appeals, and we granted a writ of error in order to settle the question. We decided it at the last term in Walker v. Haley which involved a similar conflict. 110 Texas, 50, 214 S. W., 295. That decision sustains the holding of the Court of Civil Appeals in the present case.

The oil lease contained this provision:

"It is further agreed that in the event oil is found in paying quantities in said first well, then the lessee agrees and covenants that within thirty days from the completion of such successful well he will begin the boring of a second well on some other acre of said tract herein leased, and continue to bore additional wells with due diligence in such order as to additional wells, on the tract herein leased as developments may justify, until at least five or six wells have been completed, or the acre upon which said second party has failed to drill a well reverts to the first party by written notice to that effect being served upon said second party by said first party."

The tract of land leased embraced about 20 acres and was laid off in acre blocks. Decker bored his first two wells upon different acres. He completed five wells with due diligence, but four of them

were upon the same acre. Upon the question as to whether this provision in the lease would sustain a forfeiture because of a failure to bore all of the five wells upon different acres, the Court of Civil Appeals held that the provision was ambiguous and that its meaning should have been submitted to the jury for decision.

If the provision is ambiguous, that alone condemns it as a forfeiture provision. A forfeiture should rest upon surer ground. Where a contract is so vague in its terms that a court cannot determine its meaning, it would be unjust to enforce a forfeiture under it against one whose only fault has been to possibly mistake its meaning. Forfeitures are harsh and punitive in their operation. They are not favored by the law, and ought not to be. The authority to forfeit a vested right or estate should not rest in provisions whose meaning is uncertain and obscure. It should be found only in language which is plain and clear—whose unequivocal character may render its exercise fair and rightful.

It is not necessary that we determine whether this clause in the lease requires the boring of the five wells upon five different acres, or sanctions their location upon but two different acres. If it be conceded that it admits of the first construction, it is not certain that such is its true construction. It does not plainly say that each of the wells shall be upon a different acre. It is only by inference, at best, that such meaning can be gained from the language. A provision so indefinite as to the obligation imposed, is incapable of supporting a forfeiture. Benavides v. Hunt, 79 Texas, 383, 15 S. W., 396.

Another clause in the lease was as follows:

"It is further mutually agreed that in case lessee abandons said property; or in case he fails to operate any particular well which is in actual operation on said tract, which is producing either oil or gas, for the period of thirty days, and fails to operate same for said period, unless such failure is unavoidable and is because of broken machinery that cannot by proper care and diligence be sooner replaced or put in order, or because of the wells clogging so as to reasonably require a longer time to clean and put them in order, then this lease and such producing well and the land hereinabove provided to operate it, shall revert to the lessors, and the lessors shall in such event have the right to take possession of said premises and such well, together with all of its equipments, and operate same, or have same operated for their own benefit without further proceedings, or any legal proceedings, of any kind or character, but in such event the lessee shall have the right to remove his equipments and machinery from such well so forfeited, and from said land herein leased on which said well is directly located, and not to exceed one acre, in area, but in no event to so operate as to interfere with other wells operated by lessee or with other drilling by him for other wells unless the lessors shall within thirty

days after such forfeiture elect to pay and do pay to the lessee fifty per cent. of the market price for the piping in such well or wells, and the market value of all equipments retained, and should lessors fail. to make such payment within thirty days after such forfeiture on the part of lessee and the taking over of said well by lessors, the lessee shall have the right to remove said pipe and equipment from such well and from such land."

A further ruling of the Court of Civil Appeals, complained of here by Decker, was that in the state of the proof an issue of fact was presented as to whether under this clause Decker had forfeited the lease in whole or in part.

The clause provides two different conditions as grounds for forfeiture, and different measures of forfeiture as the consequence: (1) an abandonment of the property, whereon the entire lease should terminate; and (2) a failure to operate a producing well for thirty days unless due to an excepted cause, whereon such well and the immediate land upon which it was located in extent sufficient for its operation but not to exceed one acre, should revert to the lessors. In the event of the latter happening, the lessee is given the right to remove his machinery and equipment from such forfeited well and land unless within thirty days after such forfeiture the lessors shall pay him therefor as stipulated.

As we understand its opinion the Court of Civil Appeals did not construe the clause as authorizing a forfeiture of the entire lease upon a failure to operate one of the producing wells. It held that there was evidence tending to establish an entire abandonment of the land by the lessee, and also evidence of his failure to operate producing wells for thirty days and longer. Its ruling simply was that such being the record the issues both of an entire forfeiture and a partial forfeiture should have been submitted to the jury.

If we have jurisdiction to review this holding of the Court of Civil Appeals, it is in virtue of subdivision 6 of Article 1521 as amended by the Act of 1917 (Chapter 75), by which the appellate jurisdiction of the Supreme Court is now governed. That is, it must appear that the ruling constitutes "an error of law of such importance to the jurisprudence of the State, as in the opinion of the Supreme Court requires correction." The amendment of this subdivision by the Act of 1917 was plainly intended to further limit the jurisdiction of the Supreme Court as conferred by the Act of 1913. Whether the Court of Civil Appeals "has erroneously declared the substantive law of the case" is no longer the test as applied to cases falling within the subdivision. The amendment declares, in effect, that it is not enough that the error of law be obvious, in the opinion of the Supreme Court; nor that it be of importance to the aggrieved party; nor that its correction be necessary in the view of the Supreme Court to prevent an injustice in the immediate case; nor even that it be "of importance" to the jurisprudence of the

State. For the Supreme Court to be invested with the power to revise the ruling, it is required that it amount to an error of law "of *such* importance" to the jurisprudence of the State as in the opinion of the court requires correction. This clearly pre-supposes a ruling of such erroneous consequence as, if permitted to stand, would constitute a serious departure from the established law or introduce a doctrine violative of fundamental principles.

Whatever may be the difficulties of its administration, this is the theory and plain meaning of the amendment. It is the written law, and our duty is to give it effect.

We do not consider a ruling of the Court of Civil Appeals in a particular case either that there was some evidence warranting the submission of a given issue to the jury, or that there was no evidence justifying its submission, as within the purview of the amendment unless it can be fairly regarded as so flagrantly wrong as to amount to a virtual denial and abrogation of the established rules of law which, in the one instance, enjoin upon the trial court the exercise of its essential function, and in the other preserve the right of jury trial. Where these questions are presented, our practice is to examine the record; but unless it discloses that the ruling is of the character stated, we do not regard it as one within the court's power to revise.

We have examined the record here under the assignment challenging the ruling of the Court of Civil Appeals above noted. If erroneous at all, the ruling was not so clearly wrong as to bring it properly within the Supreme Court's jurisdiction.

Other questions are presented, but they are equally without our jurisdiction.

The judgment of the Court of Civil Appeals reversing that of the District Court is affirmed, but with the direction that the further trial of the case be in accordance with this opinion.

MR. JUSTICE HAWKINS delivered the following dissenting opinion.

In so much of the foregoing majority opinion by our Chief Justice as deals with issues of which this court has entertained jurisdiction I concur; but I do not concur entirely in the application made, in that opinion, of amended subdivision 6 of R. S. Art. 1521, Acts of 1917.

It is my opinion that whenever it is shown here, to the satisfaction of this court, that a Court of Civil Appeals has held, *erroneously*, that a given issue is or is not supported by some evidence, thereby determining whether such issue is or is not properly referable to the jury, such error should be treated by this court as being, in and of itself, of such importance to the jurisprudence of the State as to require correction.

I believe that the requirements of this jurisdictional statute are met in *every such instance*, and that *intrinsically*, such error is of the stated importance, even though such error may have been

committed in treating an issue which is not of frequently recurring nature or or general interest, and even though such erroneous ruling may not have been intended as an assertion of a general principle or a general rule of practice.

I think that a holding by the Court of Civil Appeals approving or directing the submission, by the district court, to the jury, of a given issue when, in the opinion of the Supreme Court, there is no evidence to support it, or approving or directing refusal of a district court to submit to the jury a given issue when, in the opinion of the Supreme Court, there is evidence to support it, constitutes, inevitably, in every instance, "a serious departure from the established law," and introduces into our jurisprudence "a doctrine violative of fundamental principles." Instances of the former character involve refusal of the trial court to perform an "essential function"—to discharge a legal duty which ought not to be shifted to the jury; and instances of the latter character involve a practical denial of the right of trial by jury, in plain contravention of our State Constitution.

Such errors, very naturally, will occur, occasionally, and that is bad enough, even though all such errors be subject to correction by our Supreme Court; but for any such error to be recognized by this court and yet not be subject to correction by it, for lack of jurisdiction in this court, is, I think, a very serious reproach to our jurisprudence. In view of the phraseology of said amended subdivision 6, I cannot concur in a construction of it which entails that deplorable result.

I think that the practice of this court, under said statute, should be to examine the record whenever such a question is duly presented here, and, if such error be found, to correct it in every instance, upon the theory that such error is of vital importance to our jurisprudence.

As to the construction properly attributable to said statute I refer to "In re subdivision 6 of Supreme Court Jurisdiction Act of 1917," 201 S. W., 390 et seq. In so doing it is not my purpose to reopen or deal with any question concerning the constitutionality of said statute further than such question may be involved in the construction placed upon it by the majority opinion of the court in this present case.

*Affirmed and case remanded with directions.*