## TERRY et al. v. WITHERSPOON.
### (No. 1910.)

(Court of Civil Appeals of Texas. Amarillo. Feb. 22, 1922. Rehearing Denied April 5, 1922.)

1. **Chattel mortgages ⬭102—Bill of sale held not to authorize creditors to take possession of business and operate it indefinitely.**

Where the owners of a garage, who had given a chattel mortgage on certain tools and machinery to secure their notes, executed to the mortgagees a bill of sale of the other property in the garage under an agreement that the mortgagees were to turn the property into cash and apply the proceeds to the necessary expenses and to the reduction of the indebtedness, the bill of sale did not authorize the mortgagees to take charge of the property and run the business indefinitely, and especially did not authorize them to take charge of property not described in the bill, but covered only by the chattel mortgage.

On Motion for Rehearing.

2. **Appeal and error ⬭212—Erroneous direction of verdict is fundamental error.**

The erroneous action of the trial judge in directing a verdict was fundamental error, which can be reviewed, though there were no formal written objections thereto and no request was made to submit special issues.

3. **Chattel mortgages ⬭282—Evidence held to warrant jury in finding conversion or fraud by defendant so that directed verdict was erroneous.**

In an action by a chattel mortgagee, in which the defendant filed a cross-action for conversion of the property under a bill of sale alleged to have been procured by fraud, evidence *held* to warrant the jury in finding that the action of the plaintiff under the bill of sale was not warranted by the agreement in pursuance of which it was given, and that it was obtained by fraudulent misrepresentation concerning a statement made over a telephone, so that it was error to direct a verdict for plaintiff.

Error from District Court, Deaf Smith County; Reese Tatum, Judge.

Action by Vern Witherspoon against W. H. Terry and others. Judgment for the plaintiff, and defendants bring error. Reversed and remanded.

J. P. Slaton and Carl Gilliland, both of Hereford, for plaintiffs in error.

Wm. M. Knight, F. T. Roloson, and W. H. Russell, all of Hereford, for defendant in error.

HALL, J. November 23, 1920, defendant in error, Witherspoon, sued W. H. Terry and his two sons, J. G. and R. A. Terry, upon a promissory note, executed by the plaintiffs in error, in the sum of $6,695 dated May 1, 1920, and due six months after date. De-

fendant in error alleged that as security for said note W. H. Terry gave a deed of trust upon 400 acres of land in Gaines county, and that John G. and R. A. Terry gave a mortgage on certain personal property, consisting of tools, machinery, and fixtures in the Hereford garage; that on October 20, 1920, J. G. and R. A. Terry executed and delivered a bill of sale in form but which was intended as a chattel mortgage, in favor of Geo. Beams, G. E. Webb, and E. W. Kinney, conveying certain personal property, consisting of a stock of merchandise, parts, repairs, and accessories, for automobiles, Bessemer engine parts, also an acetylene engine outfit and burning-in-stand, all situated in the building of the Hereford garage. He further alleges, that at the time the bill of sale was given plaintiff, defendants and the said Beams, Webb, and Kinney, entered into a written contract which provided that the bill of sale was not to be received in discharge of the note and would not affect other securities, but that the grantees in the bill of sale would take charge of the property described therein and use their efforts in selling it; that they would turn the same into cash and use the proceeds in paying expenses of looking after the property and carrying on the business, the excess, if any, to be applied to the payment of the note. And it was the purpose and intention of the parties that the bill of sale and contract should create a lien on the property and be regarded as a chattel mortgage, placing plaintiff, Beams, Webb, and Kinney in position to further secure the note. He further alleges that Beams, Webb, and Kinney were part owners of the note with him. The defendants answered by general demurrer, general denial, and impleaded Beams, Kinney, S. E. Webb, and H. B. Webb. By cross-action they charged that, though the note was executed to Witherspoon, it was owned jointly by Witherspoon, Beams, Kinney, and G. E. Webb and was executed in part payment for the garage, tools, machinery, etc., used in the repair shop; that W. H. Terry was the owner of said garage and its contents from the date of purchase to October 20, 1920, when the property was converted by the plaintiffs; that at the time of the conversion and prior thereto W. H. Terry, through his agents and employees, was conducting a garage business selling accessories, and on said last-named date the plaintiff, Beams, Kinney, G. E. and H. B. Webb, converted all of said property to their damage in the sum of $15,000; that at the time of such conversion the note sued on, was not due. They further prayed for exemplary damages in the sum of $10,000 and for $10,000 for loss and destruction of the good will of the business. Witherspoon and his coplaintiffs replied to the cross-action, alleging that W. H.

Terry had no right to maintain the cross-action because he was not the owner of the property; that the property belonged to his sons. J. G. and R. A. Terry then filed a trial amendment, by which they adopted the cross-action of their father, W. H. Terry, and prayed that, if it was decided that they were the owners of the property, then that they recover the damages alleged. They further charged that they were induced to execute the bill of sale and the contract delivering possession of the property by the false and fraudulent representations made by Witherspoon, Kinney, and Webb, in that they were told that their father, W. H. Terry, had said for them to execute the bill of sale and contract. The court directed a verdict that the plaintiff recover the amount of the note and for a foreclosure of the liens and that the defendants recover nothing upon their cross-action.

It is insisted that this action of the court was error because the evidence was sufficient to raise the issue of fraud and conversion. We think this contention must be sustained. The facts show that about the 19th day of October, 1920, W. H. Terry was in Clarendon; that he had previously said something to Beams and Kinney about his inability to pay the note when it should mature, and asked them if they could not dispose of the garage business "in bulk," either sell it or trade it for something which they would accept in lieu of money as payment upon the note; that on said last-named date some of the plaintiffs went to the garage and talked to the sons of W. H. Terry, about selling the property for the purpose of paying off the debt, and suggested that they should have some written authority, showing their right to sell it. They were told by the sons that their father was in Clarendon, and it was suggested that Kinney talk with him over the phone. There is little controversy about the material facts in the case, and it is extremely questionable whether the plaintiffs were justified by the conversation between Kinney and W. H. Terry, in the course subsequently pursued by them. Kinney reported the conversation to the sons of W. H. Terry, and together they went to the office of an attorney, who prepared a bill of sale of this property, upon which the plaintiffs had no sort of a lien, and at the same time a writing which contains this recital:

"It is agreed that second parties will take charge of the property named in said bill of sale, and will use their efforts in selling said property and turning same into cash or into other property which second parties are willing to accept as cash, and the proceeds of said property are to be used as follows: (1) The necessary expenses of the same are to be paid, including reasonable pay for the services of either member of the second parties who attends the same, then all above what is necessary to pay on said expenses shall be applied to reduce said indebtedness to second parties."

[1] We do not construe this instrument to authorize Witherspoon, or either of his associates, to take charge of even the property described in the bill of sale and to run it indefinitely, conducting a retail business, as it appears was done until this suit was filed. In any event, it cannot be contended that it authorized them to take charge of other property not described in the bill of sale and upon which they merely had held a chattel mortgage. If W. H. Terry is to be believed, he did not authorize Kinney to inform his sons that they should execute the bill of sale and the contract. If this is true, the plaintiffs fraudulently obtained possession of the property, and their conduct of the business, running it as a retail establishment, buying and selling goods in their own names, would amount in law to conversion. These issues, together with the issue of ownership of the property, at the time the bill of sale was executed, should have been submitted to the jury.

Because of the failure of the court to do so, the judgment is reversed, and the cause remanded.

## On Motion for Rehearing.

[2] By rather a pointed motion, defendant in error asserts that we have entirely misconstrued the record, have failed to comprehend the issues, and have decided the case upon a theory foreign to that presented by the briefs of either party; that we have held that certain issues should have been submitted to the jury when plaintiffs in error asked for no such admission and have no assignments in this court to that effect. All the pith of these contentions is removed by the admission in argument by Mr. Knight, counsel for defendant in error, that he did not know that the action of a trial judge in directing a verdict was fundamental error; that formal written objections to it were not required; that a request to submit special issues in such case was not a necessary prerequisite to insisting upon the error in this court; and that fundamental error need not be assigned. Barkley v. Gibbs (Tex. Com. App.) 227 S. W. 1099; City of San Antonio v. Talerico, 98 Tex. 151, 81 S. W. 518; Wilson v. Johnson, 94 Tex. 272, 60 S. W. 242; Rowe v. C. & S. R. (Tex. Civ. App.) 205 S. W. 731; McCoy v. Wichita F. Motor Co. (Tex. Civ. App.) 207 S. W. 332; Palm v. Nunn (Tex. Civ. App.) 203 S. W. 1124; Neville v. Miller (Tex. Civ. App.) 171 S. W. 1109; Henderson & Grant v. Gilbert (Tex. Civ. App.) 171 S. W. 304; Harlington L. & W. Co. v. Houston M. Co. (Tex. Com. App.) 209 S. W. 145; Hovey v. Sanders (Tex. Civ. App.) 174 S. W. 1025; Caddell v. J. R. Watkins Med. Co. (Tex. Civ. App.) 227 S. W. 226; Earhart v. Robinson (Tex. Civ. App.) 215 S. W. 973; Almager v. S. A. & A. P. R. (Tex. Civ. App.) 215 S. W. 112; Lopez v. Garcia (Tex. Civ. App.) 221 S. W.

665; Harlan v. Acme S. F. Co. (Tex. Com. App.) 231 S. W. 348; S. W. Settlement & Development Co. v. Village Mills Co. (Tex. Civ. App.) 230 S. W. 869; Owens v. Corsicana Petroleum Co. (Tex. Civ. App.) 169 S. W. 192; Walker v. Haley, 110 Tex. 50, 214 S. W. 295; Shumaker v. Byrd, 110 Tex. 146, 216 S. W. 862; Decker v. Kirlicks, 110 Tex. 90, 216 S. W. 385. However, plaintiffs in error have assigned error upon the court's action. If the action of the court in directing a verdict for either party is error, it is so because the evidence presents issues which should have been submitted to a jury or else is so conclusive that it requires the court to direct a verdict for the other party.

[3] We think the court erred in the instant case for the reason first stated, and upon a careful review of the record we are convinced of the correctness of our holding. Our attention is called to a written stipulation which was filed in the trial court, to the effect:

"That the testimony of the witness E. W. Kinney, as to what the conversation was over the long distance telephone, had between him and the defendant W. H. Terry on the evening of October 20, 1920, was true."

The purpose of this stipulation is not clear, but it has no effect whatever upon the matters presented by the motion. Kinney's version of the conversation is as follows:

"I told him, Mr. H. B. Webb, Witherspoon and I had talked over the proposition he had mentioned about us selling the property, and told him that Mr. H. B. Webb thought it would be better to have some kind of writing to show our authority for doing so. I told him that we were figuring on letting J. G. Terry go back in the back and tell R. A. Terry stay up in the front, and I told him that I had been talking to Collins and Ferguson, and that they were thinking of sending me back to Oklahoma in a day or two, and if I left there would be no one there but Mr. Witherspoon. He said that it would be all right for Mr. Witherspoon to go ahead and stay in front of the garage, and said tell his boys that he would be back the next Monday. I said, 'Bro. Terry, we want some kind of papers—Mr. H. B. Webb thought to show some kind of authority to go in there,' and he said, 'Kinney, that will be all right.' That is about the size of the conversation, and I don't think any more was said."

W. H. Terry's testimony, with reference to that conversation, is as follows:

"The evening after I got to Clarendon, Mr. Kinney called me on the 'phone and said: 'This is Kinney talking. These prospects for selling the garage seem all blowed up.' And I replied, 'Is that so?' And Kinney said: 'Mr. Webb thinks it would be a good thing for Vern Witherspoon to go in the front and help Roy run the front part so that he might give better assistance in selling the business.' I replied that that would be all right and I had no objection to Vern Witherspoon taking such a position as that, and it came to my mind that that would be added expense on the business, and I said, 'I don't think the business will justify adding anything to the overhead charges because the two boys are in there on their salaries and that is as much as I think ought to be.' Kinney said that J. G. Terry could go and work in the back shop and make his salary back there, and Witherspoon could go in front and help R. A. Terry, and I said, 'If that seems best, I have no objection to Witherspoon going in and helping Roy that way,' and Kinney remarked for the first time, 'We will want to draw up some kind of a little contract which he can go in and work under,' and I told him that I didn't see any use for a contract, but in any case the contract could wait for a few days until I could get back to Hereford; but he said that he wanted to get it fixed up, as he had been called to Oklahoma and would likely go the next morning and would be gone for some time. I didn't want any contract until I knew about it. He said, 'Well, we will fix it up somehow.' In that conversation I told Kinney that I would perhaps be at home the following Monday."

It will be seen that the only practical difference between the statements is that Kinney said Terry agreed that papers should be drawn up, showing the authority of the defendant in error to go into the business. According to Kinney's own testimony, quoted above, he had no authority to procure from the sons of W. H. Terry a bill of sale to property not covered by the mortgage and the chattel mortgage, and he does not testify that W. H. Terry authorized his sons to execute any such an instrument. He admits that he did not mention what kind of papers they wanted, and certainly a chattel mortgage and a bill of sale, giving the defendant in error absolute possession and right of disposition of the property by retail, was foreign to the intention either of Kinney or Terry, if the record is to be believed. We have not held that the execution of the bill of sale and chattel mortgage and the act of Witherspoon in taking charge of the property thereunder is, as a matter of law, a conversion; but it is certainly an important fact bearing upon the issue, which should have been submitted to the jury. We have not held that, after the conversation between Kinney and W. H. Terry over the long distance 'phone, the act of the defendant in error and his associates, in telling the sons of W. H. Terry that they were to sign papers which had been prepared, constituted fraud, either in law or in fact; but in the face of such testimony we do hold that the issue was squarely made and should have been presented to the jury. It is clear from the testimony of W. H. Terry and his two sons that it was not contemplated that Witherspoon and his associates should take actual possession of the property and conduct a retail business in the regular way, which they were doing when this suit was filed and tried. The boys told Kinney to 'phone their father and ascertain what papers they were to sign. We are mistaken in

the original opinion in saying that the sons of W. H. Terry were present in the attorney's office when the bill of sale and chattel mortgage were drawn. From a review of the statement of facts it is clear that Witherspoon and his associates went to an attorney's office, had the papers drawn, brought them back to the garage, and that the bill of sale was never mentioned by the sons of Terry or to them until just before they were to sign. This is the testimony of Witherspoon himself. It is true that Kinney testified further on, according to the statement of facts, that W. H. Terry told him to tell the boys it would be all right for them to sign the papers that Kinney wanted, but this was an afterthought and came out upon cross-examination. This is of no benefit to defendant in error, however, because he and Kinney both testified that their purpose in getting the bill of sale and getting the boys to accept the contract was to get possession of the property in order to better secure their note. Witherspoon said that he discussed it with Webb and Kinney, and they agreed among themselves, before the papers were drawn, that this was the purpose for which they were to get the bill of sale and contract executed on October 20th, and yet in the long distance telephone conversation Kinney did not disclose that purpose to W. H. Terry, nor did he indicate the character of papers which the boys were expected to sign. We do not assert that this is fraud, but a jury might think so. The connection of defendant in error and his associates with the business, it seems, was suggested by W. H. Terry, who said:

"Kinney, you do quite a bit of trading around here; why can't you come here and help us trade it off? Maybe you could trade it for something you and Witherspoon could use and give us credit for it."

Witherspoon testified that he heard Terry say:

"Mr. Kinney, you are a good trader and are around here; why can't you come in here and help me dispose of it?"

Witherspoon further testified that the matter was discussed with reference to selling the whole thing, "lock, stock, and barrel." A jury might infer from this testimony, not only that the subsequent acts, in procuring the bill of sale and mortgage from the two younger Terrys, were fraudulent, but that the conduct of Witherspoon after getting into possession and conducting a retail business, replenishing the stock, and incurring indebtedness, instead of selling it out, lock, stock, and barrel, was not only fraudulent, but might amount, under proper instructions, to conversion. Witherspoon testified:

"We took possession of the property under the bill of sale and contract dated October 20, 1920, and are now running the repair shop and general retail business, and have since the 21st of October, 1920. We have been buying new goods and merchandise, putting them in and running the business. We bought the merchandise with the proceeds of the sales we were making. We were taking in money for repairs and goods sold, and this money we used in buying the goods and paying expenses of running the business. We commenced this as soon as we went into possession and have continued it down to the date of this trial, and are still doing it. For a while after we first went in we bought the goods in the name of the 'Hereford Garage,' and then we commenced buying them, and continued to do so down to the present time, in the name of 'Witherspoon & Kinney.' We bought these goods to replenish the stock of goods as we sold it out. We always intermingled the goods purchased with those that were on hand, and some of the goods that were on hand when we went in are still on hand, and the new goods we bought are commingled with them."

Kinney testified:

"The only thing we did to make it look like it belonged to us was what we bought and had goods shipped to Witherspoon & Kinney, instead of Terry Bros. * * * After the papers were signed, Vern Witherspoon and I both went and took charge of the business, conducted a retail business and repair shop, and took money out of the business to pay ourselves."

It would not be proper for us to hold that this constitutes an appropriation and conversion of the entire business, but a jury might consider it strongly persuasive.

The motion for rehearing is therefore overruled.

─────────────────────────────
⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted May 17, 1922.