## FELL v. BAKER.

### No. 13843.

Court of Civil Appeals of Texas. Fort Worth.

Dec. 16, 1938.

Rehearing Denied Jan. 20, 1939.

T. R. Boone and Kearby Peery, both of Wichita Falls, for plaintiff in error.

Carrigan, Hoffman & Carrigan and James E. Prothro, all of Wichita Falls, for defendant in error.

DUNKLIN, Chief Justice.

This was a suit by Mrs. Stella Baker in the statutory form of trespass to try title, for two tracts of land, one for 257.7 acres, and the other for 68½ acres, both situated in Wichita County, against A. H. Fell, who answered by general demurrer and a plea of not guilty. Those were the only pleadings of the parties.

Plaintiff deraigned title under the will of her deceased husband, T. F. Baker, which was duly probated. Actual and continued possession of her husband of the property, through tenants, for a number of years prior to his death, was also relied on to show a prima facie evidence of her title.

She claimed title adversely to the defendant upon his alleged failure to carry out and perform the obligations and conditions of the following instrument, which she introduced in evidence:

"Wichita Falls, Texas
"March 6, 1937
"Mr. A. H. Fell, Wichita Falls, Texas

"Dear Sir: For myself individually and as Executrix of the Estate of T. F. Baker, deceased, I agree to convey to you by general warranty deed, subject to the terms and conditions hereof and upon the consideration hereinafter stated, the land and

premises described in Exhibit 'A', attached hereto and made a part hereof:

"As a consideration for the foregoing, you are to pay me for 'said land the sum of $6,442.50, in the following manner:

"(a) Cash, $4,831.88; said sum to be paid to me upon the final consummation of this deal, but within the time hereinafter stipulated.

"(b) The further sum of $1,310.62, evidenced by your note of this date in the amount of said sum and secured by a deed of trust lien upon the land and premises described in Exhibits 'A' and 'B', which are attached hereto and made a part hereof, and which said note is payable in two installments, the first of which is in the sum of $310.62, which shall be due and payable December 1, 1937, and the second installment in the sum of $1,000 payable on or before December 1, 1938; said note bearing· interest from date until due at the rate of six per centum per annum, and after the due date thereof the same shall bear ten per centum per annum until paid and further providing that if the install‑ment of date due December 1, 1937, is not paid when due, then the owner or holder of said note may declare the entire debt at once due and payable, and further providing for ten per cent additional on the principal and interest as attorney's fees, if the same shall be placed in the hands of an attorney for collection or if the same shall be collected through the probate or bankruptcy court, or by any character of judicial proceeding.

"(c) The further sum of $300, evidenced by your note of this date and payable to Louis H. Gould on or before December 1, 1937, with interest from date until due at the rate of six per centum per annum and thereafter at the rate of ten per centum per annum. In this connection, it is understood and agreed that said $300 evidences the commission of Louis H. Gould in connection with the sale of the property and premises described in Exhibit 'A'; and in this connection, it is further understood that I do not assume any responsibility whatever for the payment of said commission or the payment of said note but that the said Louis H. Gould shall look alone to the said A. H. Fell for the payment of said commission or for the payment of said note evidencing the same; and in this connection, it is further understood that the said Louis H. Gould does not have or claim any lien upon the prem‑ises described in Exhibits 'A' and 'B', and if any such lien exists to secure the payment of said $300 note, then nevertheless, the same is expressly fully and finally released.

"In connection with paragraph (a) above, it is understood that you are applying to some one or more of the Federal Lending Agencies for a loan of seventy-five per cent of the purchase price of the land described in Exhibit 'A'; if said Federal Lending Agencies shall not within fifteen days from this date approve your application for a loan of seventy-five per cent of the purchase price of said land and commit itself to the making of said loan, then this entire contract shall be null and void and be of no binding force or effect upon either party hereto.

"I agree to furnish you an abstract of title certified to this date by a competent and responsible abstractor, showing good and merchantable title in me to the land and premises described in Exhibit 'A'; you are to have five days from and after the date of receipt of such abstract of title, within which to have the same examined by your attorney; if valid objections shall be raised thereto, a true. copy thereof shall be furnished me at Wichita Falls within said five day period and I shall have ten days within which to effect a cure thereof.

"It is understood and agreed that title shall be accepted by you and this trade fully and finally consummated and the consideration aforesaid fully paid within sixty days from this date; and if said title shall not be accepted by you and the entire consideration as herein defined shall not be paid by you as hereinbefore provided within said sixty days, then this contract shall be null and void and neither party bound thereby.

"It is further understood and agreed that you accept said premises subject to any and all rental contracts, verbal or otherwise, which may be outstanding and that as to· the proceeds of any and all crops raised upon said land for the year 1937, the same shall belong to you.

"It is further understood 'and agreed that you are to assume and pay off as 'and when due, any and all taxes levied and assessed against said land described in Exhibit 'A' for the year 1937.

"It is further understood and agreed that the performance of all of the obliga-

tions evidenced hereby shall be at Wichita Falls and Wichita County, Texas.

"It is finally understood and agreed that in the deed mentioned herein, the vendor's lien and deed of trust lien shall be reserved, executed and delivered upon the land and premises described in Exhibit 'A' to secure the payment of any and all of the purchase price and by the acceptance of this contract, you agree to give me a chattel mortgage lien upon all of your part of all grain and other crops grown on the land described in Exhibit 'A' as additional security for the indebtedness aforesaid, provided, however, that as to the grain you may reserve a sufficient amount to seed said premises for the crop year 1938.

"Very truly yours,
"(Signed)  Mrs. Stella G. Baker
"Accepted:
"(Signed) A. H. Fell
"(Signed) Louis H. Gould."

The two tracts sued for are described in those Exhibits "A" and "B".

The record indicates that Mr. Gould acted as broker in the negotiations leading up to the execution of the contract.

J. M. Hendrick, who resides in Wichita Falls, was employed by the Security Association of Wichita Falls, who took applications for and negotiated loans for the Federal Land Bank at Houston. He testified that the defendant filed with him an application for a loan by the Federal Land Bank at Houston, together with an abstract of title to the property. He mailed the application to the land bank at Houston, but did not enclose the abstract of title, since it was the custom never to send them the abstract until the Federal Land Bank accepted the application for the loan. The Federal Land Bank at Houston first passes on the application for a loan to determine whether the security offered is satisfactory, because it is not willing to examine the title until it knows the loan can be closed. The defendant stated to him that he was to pay $6,442.50 for the property, and applied for a loan of $5,100. The Federal Land Bank approved the loan for $4,200, but it was never closed. Of the $4,200 for which the loan was approved, the Federal Land Bank was to put up $2,500, and an agency, which was called a Commissioner, was to put up the balance of $1,700. The Federal Land Bank can only lend 45% of what the property is worth, and the emergency money is used in increasing that amount 25%, and the Bank

never makes a loan where there is an outstanding second lien on the property in favor of some other person.

After receiving that information from the Federal Land Bank, Hendrick dropped the matter and did not send in the abstract of title.

Plaintiff, Mrs. Stella G. Baker, testified in the case, and admitted receiving the following letter, addressed to her by Mr. T. R. Boone, attorney for the defendant, of date May 3, 1937, which the defendant introduced in evidence:

"May 3, 1937
"Mrs. Stella G. Baker, 2011 Victory Street, Wichita Falls, Texas

"Dear Mrs. Baker: On March 6, 1937, you made a contract with A. H. Fell, to sell to him a certain tract of land out here northwest of town, being 257.7 acres, and the contract provides that the title shall be accepted by Mr. Fell and the trade fully and finally consummated and consideration paid within sixty (60) days from date.

"Mr. Fell is now ready to fully consummate this deal, has accepted title and now demands a conveyance as provided in this instrument, and to go through with the deal. He did on the 28th of April, 1937, accept title and demanded conveyance thereof and was informed by Mr. Hoffman that he did not believe that you intended to go through with the deal, so he filed the contract of record on April 28, 1937, which is now recorded in Volume 345, page 187, of the Deed Records of Wichita County, Texas, and he here and now accepts the title, here and now offers the consideration as provided therein and to fully and completely perform and demands performance of you.

"This letter is written at the request of Mr. A. H. Fell, and the writer is having Mr. Fell to sign this letter, giving a copy thereof to Mr. Hoffman.

"Yours truly,
"TRB:S              (Signed)  T. R. Boone
"cc Messrs. Carrigan, Hoffman & Carrigan,
"Attorneys at Law,
"Hamilton Building,
"Wichita Falls, Texas."

Plaintiff, Mrs. Baker, testified in part as follows:

"Q. (By Mr. Hoffman, her counsel) Now, Mrs. Baker, under the terms of the contract that you had with Mr. Fell, and which are described in Exhibits 9 and 10, Mr. Fell agreed to pay you for the land de-

scribed in this contract an amount of money equaling $6,442.50, is that correct? According to your record? A. Yes, sir.

"Q. Do you remember how much cash was to be paid? A. $4,800.00.

"Q. $4,831.88? A. Yes, sir.

"Q. Now, do you remember in the negotiations that you had with Mr. Fell over there in my office and with Mr. Gould how that money was to be obtained? How the cash was to be obtained? A. He was to borrow money from the government on the land.

"Q. Well, now have you ever received any money at all under this contract for the land? A. No, sir, I have not."

According to her further testimony, the defendant and Mr. Gould came to her and told her that the Federal Government would approve a loan on the property for $4,200, but not for $4,800, which was seventy-five per cent of the value of the property, but offered to give liens on diamonds and cattle as security for the excess of the loan over and above the amount which the Government would lend, and thus leave the Federal Land Bank with a first and only lien on the property, as the Government would not make a loan with an outstanding second lien in favor of a third person.

Plaintiff further testified as follows:

"Q. (By Mr. Hoffman) All right, did Mr. Gould, in the presence of Mr. Fell, say anything to you about whether the Federal Land Bank had notified them that they wouldn't make the loan if there was going to be a second lien outstanding? A. Repeat that again, please.

"Q. Did Mr. Gould tell you, on the occasion of his and Mr. Fell's visit to your home, and, in the presence of Mr. Fell, did he tell you that he had been informed by the Federal Land Bank's agent that the Federal Land Bank would (not) make this loan if there was going to be a second lien against the land? A. As well as I remember, Mr. Gould said something of it but I wouldn't say positive about that, but as well as I remember."

On Recross Examination, she testified as follows:

"Q. (By Mr. Boone) Mrs. Baker, this conversation that you had with Mr. Gould, how long was that after you made the contract here dated March 6, '37? A. I can't tell you exactly. I would say a month.

"Q. Was it before you got this letter from me, or Mr. Fell, on the 3rd day of May, 1937? A. The 3rd day of May?

"Q. The contract was made March 6 A. Well, I would think it was after.

"Q. After what? A. After this letter.

"Q. After this letter? Aren't you mistaken? Wasn't it before this letter? A. Well, I am not positive about the date. I didn't put the dates down. I didn't put the dates down because Mr. Fell told me if he couldn't get the money he would not cause me any trouble.

"Q. Well, then, you got this letter stating he was ready to go forward with it, didn't you? A. I got a letter from you, yes, sir.

"Q. And stating that he was ready to go forward with the deal. A. And I was ready and I called him up—I didn't know anything about the diamond ring business and I called him up and he said he couldn't get the deal through like I wanted and it looked like we would have to cancel the contract, and that he wouldn't cause me any trouble. I called him at his home.

"Q. When did the diamond deal come up. When was that? Was that not after they got this loan? Was that before you got this letter here, or after you got this letter dated May 3rd? A. I can't say positively."

At the conclusion of the evidence, the court instructed a verdict in favor of the plaintiff, and the defendant has prosecuted this writ of error, from judgment rendered in accordance with that instruction.

As noted, there were two provisions for the termination of the contract of sale, and the forfeiture of any rights either party may have as against the other thereunder. The first reads: "In connection with paragraph (a) above, it is understood that you are applying to some one or more of the Federal Lending Agencies for a loan of seventy-five per cent of the purchase price of the land described in Exhibit 'A'; if said Federal Lending Agencies shall not within fifteen days from this date approve your application for a loan of seventy-five per cent of the purchase price of said land and commit itself to the making of said loan, then this entire contract shall be null and void and be of no binding force or effect upon either party hereto."

And the second reads: "It is understood and agreed that title shall be accepted by you and this trade fully and finally con-

summated and the consideration aforesaid fully paid within sixty days from this date; and if said title shall not be accepted by you and the entire consideration as herein defined shall not be paid by you as hereinbefore provided within said sixty days, then this contract shall be null and void and neither party bound hereby."

There is no finding in the record of the grounds upon which the court instructed the verdict in favor of the plaintiff. Evidently it was upon one or the other of those two stipulations for a termination of the contract.

But in defendant in error's brief, in reply to the argument advanced in brief of plaintiff in error, that the letter written by Mr. Boone to the plaintiff, of date May 3, 1937, constituted a compliance on his part with the second contractual provision quoted in the brief, this is said:

"As shown previously in this Brief, the contract in question failed on a material condition precedent expressed therein and such failure brought about an immediate termination of same, so that it is unnecessary to go into the question of whether or not there was compliance by defendant with the particular contract provision quoted above. Plaintiff in error in his brief conspicuously neglected to quote or mention that particular provision of the contract which immediately precedes the provision quoted above and which is quoted verbatim in this Brief on pages 2 and 3, and in the statement of facts, page 41, paragraph 2. It is on that provision that plaintiff (defendant in error) places her right to rescission in this case."

It may, therefore, be assumed that the action of the trial court in instructing the verdict for the plaintiff was based solely upon the conclusion reached, as a matter of law, that the contract became null and void and of no binding force or effect upon either party by reason of the fact that the Federal Land Bank did not within fifteen days from the date of the contract approve the defendant's application for a loan of seventy-five per cent of the purchase price on the land, and commit itself to the making of said loan.

In other words, that provision of the contract was given controlling effect to the exclusion of other provisions in the contract giving the defendant the right to title to the property by paying the consideration expressed in the contract within sixty days from its date, and with a further provision that the contract would be terminated for failure to pay for the same in that length of time, as shown in the second provision quoted.

Those two provisions were for the forfeiture of any of the defendant's rights to purchase and pay for the land; and that they render the contract on that particular point ambiguous is self-evident.

In 43 Tex.Jur., par. 217, p. 385, this is said:

"The right of the vendor to recover the property by an action in trespass to try title, for default by the purchaser, is, it seems, substantially the same as his right to rescind on that ground. The general rule, in the case of an executory sale, is that the vendor or his successor may sue for the recovery of the property when the purchaser has defaulted in making payment. But the vendor cannot recover so long as the purchaser is not in default; accordingly he cannot maintain an action to recover the property where the purchaser has made no default. * * *

"The contract may, of course, stipulate that a default of the purchaser shall ipso facto terminate the contract and forfeit his rights thereunder. But, as we have seen, a forfeiture provision is for the benefit of the vendor. Although the vendor may elect to declare a forfeiture, the language of the contract must be impelling to require him to accept one against his will. So, as a rule, a forfeiture does not take place automatically; the vendor or his successor must 'declare' it or in some appropriate manner exercise the right to forfeit. When the contract prescribes the manner of exercising the right of forfeiture, its provisions must be scrupulously observed." 43 Tex.Jur., par. 202, p. 352.

"In order that a party may rescind a contract of sale, he must, doubtless, have the 'right' to do so. As a general rule, the vendor or his successor has a legal or equitable right, at his election, to rescind an executory contract on certain recognized grounds, until the purchase money debt is paid or the right is barred by the statute of limitation. But the right to rescind is not an absolute one, enforceable in all cases. On the contrary it may be lost or waived and it may not be exercised when, under the circumstances, rescission would be inequitable. * * *" 43 Tex.Jur., par. 206, p. 358.

"The cardinal rule in construing a contract is to ascertain and give effect to the intention of the parties, as expressed in the language which they have used, provided that such intention is not in conflict with the rules of law; and this is the general purpose of all rules for the construction of contracts.

"The general intent and leading purpose should control minor inharmonious provisions. If two purposes or intents may be inferred from the language used and the main purpose clearly appears, such main purpose will control. This rule means that where language is used which is susceptible of two meanings, that meaning will be adopted which does not contradict the main purpose of the instrument, as evident on its face." Tex.Jur., vol. 10, par. 159, p. 272.

"Where a contract is ambiguous or its meaning is doubtful, it will be construed most strongly against the party who drew or wrote it, and was responsible for the language used—especially where it provides for exemptions from liability in his favor. This rule does not require that a strained construction should be put upon a contract in order to favor the party who did not draw it, but rather that, in case of a reasonable doubt as to which of two constructions best accords with the intent of the parties, that should prevail which is least favorable to the party whose language it is." 10 Tex.Jur., par. 162, p. 277.

"The intention of the parties to a contract is to be gathered from a consideration of the entire instrument, taken by its four corners. In other words, the contract must be read, considered and construed as a whole, and all of its provisions must be taken into consideration and construed together in order to ascertain its meaning and effect.

"Ordinarily it is not proper to consider a single paragraph or clause by itself in order to ascertain its meaning. Each clause or paragraph must be construed with reference to every other paragraph and the effect of one paragraph upon the other determined. A presumption at variance with the effect of the other provisions of a contract will not be raised upon a single one of its provisions; and a purpose which is necessarily inferred from the language of a particular clause, when considered alone, is not controlling where it is expressly negatived by a subsequent clause. But the intent of the parties with respect to a particular matter is to be gathered wholly from a particular paragraph where it alone refers to the matter and the other provisions refer wholly to different matters.

"It is to be presumed that every provision of a contract was incorporated for a purpose. The court has no right to nullify any of its terms, and, if possible, a construction will be adopted which gives effect to each and every part of the instrument, in preference to one which would render any of the provisions therein meaningless." 10 Tex. Jur., par. 164, p. 282. See, also, 43 Tex. Jur., pars. 59 and 60, pp. 97 and 98; pars. 66 and 67, pp. 104 to 107.

Forfeiture, as applied to this case, means forfeiture of the right of defendant to purchase, given by the contract.

■■ And the following announcement by the Supreme Court, in Decker v. Kirlicks et al., 110 Tex. 90, 216 S.W. 385, is applicable here [page 386]: "If the provision is ambiguous, that alone condemns it as a forfeiture provision. A forfeiture should rest upon surer ground. Where a contract is so vague in its terms that a court cannot determine its meaning, it would be unjust to enforce a forfeiture under it against one whose only fault has been to possibly mistake its meaning. Forfeitures are harsh and punitive in their operation. They are not favored by the law, and ought not to be. The authority to forfeit a vested right or estate should not rest in provisions whose meaning is uncertain and obscure. It should be found only in language which is plain and clear, whose unequivocal character may render its exercise fair and rightful."

■ As shown, the first provision for forfeiture is followed by an agreement of the seller to furnish an abstract of title showing good and merchantable title in the land—but with no stipulation as to when the same would be furnished—with the right of the defendant to have five days after its receipt within which to have the same examined by his attorneys; and if valid objections should be raised thereto, a true copy thereof should be furnished to plaintiff within that five day period, and the plaintiff should then have ten days within which to cure the defects. Under that paragraph of the contract, plaintiff would have been entitled to a reasonable time within which to furnish to defendant an abstract of title. The record does not show the date it was furnished, but even if it was furnished immediately after the con-

752

tract became effective, those two periods, five and ten days, would aggregate fifteen days, and if that period of time was thus consumed, it would have been impossible for the Land Bank at Houston to pass on the title and commit. itself to the making of the loan within that period, even though on the last day thereof plaintiff had been able to furnish an abstract showing good title to the land, and even though defendant's application .for a loan of the desired amount had been theretofore approved. It thus appears that the first provision for forfeiture, when read in connection with the paragraph just referred to, was itself ambiguous.

As shown in the first paragraph of the contract of sale, plaintiff bound herself to convey the property by general warranty to the defendant, for the consideration therein stated, and the second provision quoted above, requiring the defendant to accept title and pay the full consideration therefor within sixty days from the date of the contract, shows clearly that the main purpose of the contract was one of sale and purchase to be consummated within that period of time, and that the requirement for securing a loan from the Federal Land Bank was merely to insure the .raising of the purchase money within the sixty day period stated for closing the transaction.

Hence, the holding made by the trial court that the contract showed on its face that the defendant's right of purchase was terminated by his failure to get from the Federal Land Bank an approval of his application for a loan of seventy-five per cent of the purchase price, and that it would commit itself to the making of said loan all within fifteen days of the date of the contract, was erroneous. Especially so, in view of the plaintiff's testimony noted above, tending to show that after the expiration of said fifteen day period, she was willing to go on with the trade and close the transaction, upon payment of the consideration stated within the sixty day period from the date of the contract, thus evidencing an election not to claim the forfeiture under the fifteen day period.

If the surrounding facts and circumstances could be looked to to determine the intention of the parties as to which of those ambiguous and conflicting stipulations in the contract should be given effect, then that would be a question for the determination of the jury, and the court could not withdraw the same from the jury, under the testimony of the plaintiff herself.

 And in view of the quoted statement from the brief of the defendant in error, to the effect that the plaintiff relied solely upon the first provision for forfeiture, it becomes unnecessary to determine the sufficiency of the defendant's tender of performance of the contract, which was made within the sixty day period fixed for the payment of· the consideration mentioned.

. In this connection, we quote the following from 10 Tex.Jur., par. 229, p. 402:

"A tender and offer to perform a condition precedent and a refusal by the party entitled to the benefit of it, is equivalent to performance, to the extent of authorizing a suit on the contract for nonperformance."

For the reasons stated, the judgment of the trial court is reversed and the cause is remanded.