**WEST et al. v. CONTINENTAL OIL CO.**
Civ. No. 594.

United States District Court.
S. D. Texas, Corpus Christi Division.
June 27, 1950.

---

C. B. Beard, of George West, Texas, and Davis, Hall, Clemens & Knight (A. V. Knight), of San Antonio, Texas, for plaintiffs.

Roland B. Voight, of Houston, Texas, for defendant.

HANNAY, District Judge.

This case was tried upon an Agreed Statement of Facts with exhibits, and by briefs. Such agreed statement is adopted by the Court as Findings of Fact, and is substantially as follows:

Findings of Fact.

The plaintiffs, A. W. West and Margie Harrison West, sue for the cancellation of an oil and gas lease, dated August 5, 1947, covering 654.94 acres of land in Live Oak County, Texas.

On February 1, 1941, the Independent Executors (including A. W. West) of the Estates of George W. West and Mrs. George W. West, both deceased, executed to the defendant Continental Oil Company, an oil and gas lease with a primary term of 5 years covering a number of tracts of land containing approximately 5,420 acres, including the 654.94 acres involved in this suit.

Thereafter on March 20, 1942, the said estates were partitioned, A. W. West being

allotted as his own property approximately 5,723 acres, including the 654.94 acres mentioned.

On February 20, 1943, the defendant, Continental Oil Company, pursuant to its right reserved under the lease, released the lease dated February 1, 1941, as to all of the land covered thereby, except approximately 2,800 acres, which included the 654.94 acres involved in this suit owned by A. W. West and approximately 2,200 acres owned by his daughter, Josephine West McClelland, contiguous to the 654.94 acres.

In July, 1945, under the lease of February 1, 1941, defendant completed an oil well on the 654.94 acres of land involved in this suit, having an initial potential of 103 barrels daily, but due to its high gas-oil ratio, its allowable was subsequently decreased to approximately 6 barrels per day during the early part of 1947. Defendant has produced the allowable from said well since about August 1, 1945, the same on August 5, 1947, and now being approximately 6 barrels of oil for each day of operation. After completion of said well defendant drilled no other wells and paid no further rental under the 1941 lease, but has paid or tendered plaintiffs one-eighth of all oil produced and saved from the completed well.

Subsequent to the completion of the said well, A. W. West demanded the drilling of additional wells and the resumption of payment of delay rental on the tract owned by him consisting of 654.94 acres and the tract owned by Josephine West McClelland consisting of approximately 2,200 acres. He also demanded the re-working of the one well which was completed. In July, 1947, A. W. West informed defendant he intended to file suit to cancel the lease with respect to said tracts, contending defendant could not hold the unreleased tracts of approximately 2,200 acres and 654.94 acres without payment of delay rent or further development. The lease was beyond its primary term, and the production from the well was no longer sufficient to pay the cost of lifting the oil, and it was considered terminated. Defendant stated it would buy a new five-year primary term lease on the tract of 654.94 acres and would pay plaintiff A. W. West a consideration

of $50 per acre bonus therefor, a total of $32,747, to which he agreed. Defendant thereafter prepared a new lease (herein involved) dated August 5, 1947, and paid plaintiff A. W. West in August, 1947, the sum of $327.47, and paid the remainder in January, 1948, at plaintiff's request. The plaintiff on or about August 5, 1947, executed and the defendant accepted the new lease dated August 5, 1947, and the same became effective as of that date.

After the new lease was executed (in October of 1947 and again in December of 1947) the price of oil advanced materially. As a result of such increased price, the revenue from the well increased to the extent that it exceeded the cost of operating the well and paid a profit, and it has continued to do so since that time. Except as hereinabove stated, the defendant has produced oil in paying quantities from said well since its completion.

At the time the lease of August 5, 1947, was executed nothing was said about the drilling of additional wells or about the one well on the leased land which had been completed in July of 1945.

On May 24, 1948, a release of the 1941 lease was executed by defendant and placed of record.

Defendant drilled no additional wells on the 654.94 acres, or on any unitized area of which any of the 654.94 acres was a part, during the first lease year ending August 5, 1948, or thereafter, and plaintiff did not demand the drilling of any additional wells during such year or thereafter. Defendant did not tender or pay delay rental of $654.94 within one year from the date of the lease of August 5, 1947, or at any time before plaintiff demanded a release of the lease dated August 5, 1947.

During the period from August 1, 1947, to August 1, 1948, defendant produced oil from the well completed in July, 1945, and paid plaintiff the amount of $559.95, being one-eighth of the net value of the oil produced and saved during this period from such well, which amount plaintiff accepted and retained. The period ending August 1 is used instead of August 5 because defendant's accounting runs by calendar

months. The defendant has tendered to plaintiff one-eighth of the oil produced and saved from said well since August 1, 1948, but plaintiff has refused to accept such payments.

By a letter dated August 24, 1948, A. W. West declared the lease to be terminated and requested a release. By a letter dated August 31, 1948, defendant advised plaintiff that the lease was still in force as a result of production.

Paragraph 2 of the lease of August 5, 1947, provides: "Subject to the further provisions hereof, this lease shall continue in full force and effect for a period of five (5) years from this date, hereinafter referred to as the primary term, and as long thereafter as either (1) oil, gas, or any other mineral is produced from the land herein leased or from any land with which said land or any part thereof is then unitized as hereinafter provided, or (2) the shut-in well money is paid in accordance with paragraph 3(b) hereof, or (3) drilling operations are conducted in good faith on the land herein leased or on any land with which the land herein leased or any part thereof is then unitized as herein provided. As used in this lease, drilling operations shall include any activity on the leased premises or on land with which the leased premises or any part thereof is then unitized in a good faith effort to obtain, increase, improve or reestablish production from such leased premises or unit: drilling operations shall be considered as being conducted in good faith if not more than ninety (90) days are permitted to elapse between the cessation of production or drilling operations as herein defined on one well and the commencement of drilling operations on another well or hole upon the leased premises or on lands with which the leased premises or any part thereof is then unitized."

Paragraph 4 of said lease provides for the payment of rentals and reads, in part, as follows: "If operations for the drilling of a well are not commenced on the land herein leased or on a unitized area of which the land herein leased or a part thereof is then a part on or before one year from this date, then this lease shall terminate unless on or before such anniversary date Lessee shall pay or tender to Lessor or deposit or tender for deposit to the credit of the Lessor in the Frost National Bank at San Antonio, Texas, or its successors (which bank and its successors are Lessor's agents and shall continue as the depository for all rentals payable hereunder regardless of any change in the ownership of said land or the rental) the sum of Six Hundred Fifty-four, 94/100 Dollars ($654.94), which payment shall maintain Lessee's rights hereunder in effect without commencement of drilling operations for the period of one year. In like manner and upon a like payment or tender annually the commencement of drilling operations may be further deferred for successive annual periods during the primary term hereof. All such payments (herein called rentals) or tenders may be made by check or draft of Lessee or any assignee of Lessee mailed or delivered to Lessor to the depository bank on or before the rental paying date. * * *

Section 6(a) of such lease reads as follows: "If, at any anniversary date hereunder, operations for the drilling of a well are being conducted at some location on the leased premises or on land with which the leased premises or any part thereof is unitized, or if oil, gas, or other mineral is being produced from the leased premises (or) from land with which the leased premises or any part thereof is then unitized, then this lease shall continue in full force and effect for the annual period next following without the payment of any delay rental."

The lease of August 5, 1947, does not contain an express covenant providing for or defining proper or timely development, nor does it contain any provision for a partial release or cancellation.

The record is devoid of information as to the depth of the well, its cost, the thickness of the oil sand, or of development, if any, in the vicinity, nor does it contain any geological or geophysical information concerning the acreage herein involved, or the reasonable probability of securing further production from said land. The record is also silent as to whether the defendant is, or is not solvent.

### The Contentions of the Parties.

The contentions of the parties, briefly stated, are as follows: Plaintiffs contend that since drilling operations were not begun or delay rentals of $1 per acre, amounting to a total of $654.94, paid or tendered on or before August 5, 1948, as provided in paragraphs 2 and 4 of the lease, said lease became subject to cancellation; that they have a dual remedy, which included forfeiture; and that the plain purpose in making the new lease was to get new activity on the land involved, not to continue with the old inactivity. Defendant relies upon paragraph 6(a) of the lease, set out above, and says that the production in paying quantities from the well on the leased premises maintained the lease in force for the lease year which commenced August 5, 1948, and ended August 5, 1949, without the payment of delay rentals, and that the remedy of cancellation is not available to plaintiffs.

### Discussion.

The remedy sought by plaintiffs is cancellation or forfeiture of the lease dated August 5, 1947.

The basis of such relief must either be by reason of the express language of the lease or because of the implied covenant of development with due diligence, of the land here involved.

Considering the provisions of the lease, paragraph 2, dealing with the duration of the lease, reads in part as follows: " * * * This lease shall continue in full force and effect for the period of five (5) years from this date, hereinafter referred to as the primary term, and as long thereafter as either (1) oil, gas, or other mineral is produced from the land herein leased. * * *"

Paragraph 4 of the lease relates to the payment of delay rental, if such be necessary.

Section 6(a) says: "If, at any anniversary date hereunder, * * * oil, gas, or other mineral is being produced from the leased premises, * * * then this lease shall continue in full force and effect for the annual period next following without the payment of any delay rental."

The parties hereto have stipulated that on the first anniversary date of the lease, to wit: August 5, 1948, the well on the leased premises was producing oil in paying quantities. In Ryan v. Kent, Tex.Com.App., 36 S.W.2d 1007, at page 1011, it was held that by oil being produced from wells drilled under a prior lease would comply with the terms of the new lease "as it *unquestionably* would be oil 'produced from said land by the lessee'." (Italics added.)

Analyzing the law applicable to the claimed cancellation by reason of the implied covenants of the lease, the following propositions may be regarded as settled law in Texas:

*First:* Generally, forfeitures are not favored. Brown v. Palatine Ins. Co., 89 Tex. 590, 595, 35 S.W. 1060, 1061; Collins v. Humble Oil & Refining Co., Tex.Civ App., 223 S.W. 696; W. T. Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W. 2d 27.

*Second:* Forfeitures will only be decreed in an oil and gas lease where provision therefor is plain and satisfactory. Ryan v. Kent, Tex.Com.App., 36 S.W.2d 1007.

*Third:* Where an oil and gas lease is susceptible of two interpretations, it should be so construed as to prevent forfeiture. Decker v. Kirlicks, 110 Tex. 94, 216 S.W. 385, 386.

*Fourth:* A liberal construction of an oil and gas lease will not be given in order to cause a forfeiture. South Texas Tel. Co. v. Huntington, 104 Tex. 350, 136 S.W. 1053, 138 S.W. 381.

*Fifth:* In the absence of extraordinary circumstances, such as drainage of the leased premises, Magnolia Petroleum Co. v. Page, Tex.Civ.App., 141 S.W.2d 691, error refused, or abandonment, Texas Co. v. Davis, 113 Tex. 321, 254 S.W. 304, 255 S.W. 601, or where the lessee is insolvent, W. T. Waggoner Estate v. Sigler Oil Co., supra, 19 S.W.2d at page 32, the usual remedy is an action for damages

where there has been a breach of lessee's implied covenant for reasonable development.

*Sixth:* The burden to show such unusual circumstances so as to effect a cancellation of the lease is upon plaintiffs, and proof thereof must be clear, convincing, and satisfactory. Phillips Petroleum Co. v. Rudd, Tex.Civ.App., 226 S.W.2d 464, at page 468.

*Seventh:* Production necessary to continue an oil and gas lease in force and effect means production in paying quantities to the lessee. Garcia v. King, 139 Tex. 578, 164 S.W.2d 509.

### Conclusions of Law.

1. On August 5, 1948, oil in paying quantities was being produced from the leased premises. Ryan v. Kent, supra.

2. On the facts shown, a case of cancellation of the lease of August 5, 1947, has not been presented. W. T. Waggoner Estate v. Sigler Oil Co., supra; Cosden Oil Co. v. Scarborough, 5 Cir., 55 F.2d 634, 635.

3. Judgment is therefore for defendant.

4. All costs herein are adjudged against plaintiffs.

Clerk will notify counsel. Counsel for defendant will prepare and present proper decree within ten days.