## WEST et al. v. CONTINENTAL OIL CO.
### No. 13371.

United States Court of Appeals
Fifth Circuit.
March 13, 1952.

Rehearing Denied April 14, 1952.

A. V. Knight, San Antonio, Tex., C. B. Beard, George West, Tex., for appellants.

Roland B. Voight, Houston, Tex., for appellee.

Before HUTCHESON, Chief Judge, and RUSSELL and RIVES, Circuit Judges.

RIVES, Circuit Judge.

Appellants sued in the state court asserting that a mineral lease executed by them as lessors on August 5, 1947, expired by its own limitations on August 5, 1948, because appellee, lessee, began no drilling operations and paid no delay rental as required by the lease. Appellee removed to the federal court and pleaded that oil was being produced in paying quantities on the anniversary date from an old well drilled under a former expired lease and that such production preserved the later lease.

The parties submitted the case on an agreed statement of facts which was adopted by the district court as its findings of fact and which is substantially set forth in the opinion of the District Court reported in 91 F.Supp. 505.

The question to be determined is whether the lease by its own terms expired on the first anniversary date for failure of appellee to begin drilling operations as defined in the lease and failure to pay delay rental, or whether it was continued in effect by the production of oil from an old well drilled under a former lease.

In July, 1945, under the former lease, the appellee completed an oil well on the land involved in this suit, having an initial potential of 103 barrels daily, but due to its high gas-oil ratio, its allowable was subsequently decreased to approximately 6 barrels per day during the early part of 1947. Appellee has produced the allowable from said well since about August 1, 1945, the same on August 5, 1947, and now being approximately 6 barrels of oil for each day of operation. The appellants demanded the drilling of additional wells and the resumption of payment of delay rental, and also demanded the re-working of the one well which was completed. In July, 1947 the appellants informed the appellee that they intended to file suit to cancel the former lease, contending that appellee could not hold the land without payment of delay rent or further development. The former lease was beyond its primary term, and the production from the well was no longer sufficient to pay the cost of lifting the oil, and it was considered terminated. The appellee stated that it would buy a new five-year primary term lease on the tract of 654.94 acres and would pay appellants a consideration of $50.00 per acre bonus therefor, a total of $32,747.00, to which appellants agreed. Appellee thereafter prepared the new lease herein involved dated August 5, 1947, and paid appellants in August, 1947 the sum of $327.47 and paid the remainder of the agreed bonus in January, 1948, at appellants' request. The new lease was executed and became effective on its date, August 5, 1947.

After the new lease was executed, in October of 1947, and again in December of 1947, the price of oil advanced materially. As a result of such increased price, the revenue from the well increased to the extent that it exceeded the cost of operating the well and paid a profit, and it has continued to do so since that time. At the time the lease of August 5, 1947, was executed nothing was said about the drilling of additional wells or about the one well on the leased land which had been completed in July of 1945. Appellee drilled no additional wells on the land and appellants did not demand the drilling of any additional wells. Appellee did not tender or pay the delay rental of $654.94 within one year from the date of the lease of August 5, 1947, or at any time before the appellants on August 24, 1948, demanded a release of the lease. During the first year of the lease, the appellee paid the appellants the amount of $559.95, being one-eighth of the net value of the oil produced from the old well. The appellee has tendered to appel-

lants one-eighth of the oil produced from the old well since that time, but the appellants have refused to accept such payments.

Appellants complain because the district court treated the case as one to cancel or forfeit a lease rather than one to declare that the lease had expired by its own terms. The appellee, to the contrary cited a number of Texas decisions in which a suit to declare a lease terminated by its own limitations was discussed or treated as if it were, in practical effect, a suit to cancel or forfeit a lease.[1] Appellants, in support of their contention, cite a number of authorities in which the distinction has been deliberately considered and the rule declared as it was stated by Judge Bryan for this court in Empire Gas & Fuel Co. v. Saunders, 22 F.2d 733, 735: "The equitable rule as to relieving against forfeiture has no application to the facts of this case, for there was no forfeiture; there was nothing to be forfeited, because the lease by its very terms had ceased to exist."[2] Since in St. Louis v. Continental Oil Co., 5 Cir., 193 F.2d 778, we have pointed out that this conflict is only apparent, we need not deal further with it here, especially if we conclude that by its own terms the lease had not expired.

■ We come then to consider the terms of the new lease in the light of the cir-cumstances existing at the time the lease was executed.[3] Apparently neither of the parties clearly foresaw the possibility that the price of oil might advance so as to make the continued operation of the existing well profitable, and at the time of the execution of the lease, nothing was said about the drilling of additional wells or about the one well then completed on the leased land. A printed oil and gas lease form, known as form 88, was used for the new lease and most of its terms refer to the usual situation where a new well or new wells are to be drilled.

The only case involving the construction of such a lease that either party has been able to find where the production was from a well drilled under a former lease is Ryan v. Kent, Tex.Com.App., 36 S.W.2d 1007, 1010. The facts and circumstances surrounding the execution of the new lease in that case were very different from those in this case. In that case, the wells on the property were producing in paying quantities at all times. The last lease had no drilling clause or delay rental clause, these being left in blank. The only value of that case in arriving at a decision of this case is the court's consideration of the words used in the term clause, "as long * * * as oil or gas or either is produced from said land by the lessee",[4] as to which the court said: "Construing the contract in the light

---

1. Johnson v. Montgomery, Tex.Civ.App., 31 S.W.2d 160; Wisdom v. Minchen, Tex. Civ.App., 154 S.W.2d 330; Ryan v. Kent, Tex.Com.App., 36 S.W.2d 1007; Id., Tex. Civ.App., 20 S.W.2d 1099; Decker v. Kirlicks, 110 Tex. 90, 216 S.W. 385; Knight v. Chicago Corp., 144 Tex. 98, 188 S.W.2d 564; Bouldin v. Gulf Production Co., Tex.Civ.App., 5 S.W.2d 1019; Garcia v. King, 139 Tex. 578, 164 S.W.2d 509; Id., Tex.Civ.App., 152 S.W.2d 918.

2. See also Gas Ridge, Inc. v. Suburban Properties, Inc., 5 Cir., 150 F.2d 363; Gillespie v. Bobo, 5 Cir., 271 F. 641; 31–A Texas Juris, Sec. 161, p. 285, Sec. 147, ps. 253–6; 8 Texas Law Review 483, 521.

3. Reed v. Merchants Co., 95 U.S. 23, 30, 24 L.Ed. 348; Gilbreath v. States Oil Corporation, 5 Cir., 4 F.2d 232; West v. Commissioner, 5 Cir., 150 F.2d 723; Ryan v. Kent, Tex.Com.App., 36 S.W.2d

1007; Garcia v. King, 139 Tex. 578, 164 S.W.2d 509; Freeman v. Magnolia Co., 141 Tex. 274, 171 S.W.2d 339; Hoffer Oil Corporation v. Hughes, Tex.Civ.App., 16 S.W.2d 901; Anderson & Kerr Co. v. Bruhlmeyer, 134 Tex. 574, 136 S.W.2d 800.

4. The corresponding paragraph of the lease here involved reads: "2. Subject to the further provisions hereof, this lease shall continue in full force and effect for a period of five (5) years from this date, hereinafter referred to as the primary term, and as long thereafter as either (1) oil, gas, or any other mineral is produced from the land herein leased or from any land with which said land or any part thereof is then unitized as hereinafter provided, or (2) the shutin well money is paid in accordance with paragraph 3(b) hereof, or (3) drilling operations are conducted in good faith on the land herein leased or on any land with

of these well-established principles, we think the provision for continuing the lease after the initial or fixed period of five years 'as long * * * as oil or gas or either is produced from said land by the lessee' is not an ambiguous one. In plain terms it gives the lessee the right to continue to explore the land for oil so long as oil is produced by him from the premises, and this regardless of whether such oil should be produced from existing wells or from those subsequently drilled under the present lease."

Appellants place their principal reliance on the drilling clause left blank in the case of Ryan v. Kent, supra, contained in Paragraph 4 of the lease, which provides "if operations for the drilling of a well are not commenced on the land herein leased * * * on or before one year from this date, this lease shall terminate unless on or before such anniversary date lessee shall pay * * * the sum of $654.94 * * *".

The principal contrary reliance of the appellee rests upon that part of paragraph 6 (a) of the lease reading as follows: "6.(a) If, at any anniversary date hereunder, operations for the drilling of a well are being conducted at some location on the leased premises or on land with which the leased premises or any part thereof is then unitized, or if oil, gas, or other mineral is being produced from the leased premises (or) from land with which the leased premises or any part thereof is then unitized, then this lease shall continue in full force and effect for the annual period next following without the payment of any delay rental. * * *"

Both parties insist that other provisions of the lease and the lease as a whole sustain their respective and opposite constructions. The question is a close one full of doubt and difficulty. In final analysis, however, it seems to us that the provision of paragraph 4 of the lease relied upon by the appellants must be read in the light of the definition of "drilling operations" contained in paragraph 2: "As used in this lease, drilling operations shall include any activity on the leased premises * * * in a good faith effort to obtain, increase, improve or reestablish production from such leased premises * * *".[5] That definition, differing from most of the other provisions of the lease, clearly takes into consideration the case of a well in existence on the leased premises at the time of the execution of the lease. Considering that definition, the provision of paragraph 6(a) and all of the terms of the new lease in the light of the circumstances existing at the time of its execution, we hold that the lease was continued in effect by the production of oil from the old well drilled under the former lease. If the appellants are dissatisfied with the returns from the lease and if the lessee should fail to comply with the implied covenant to develop the land, appellants would still have the remedy provided by Texas law, Ryan v. Kent, Tex.Com.App., 36 S.W.2d 1007, 1011.

From our view of the terms of the lease in the light of the circumstances of this case, it results that the judgment must be affirmed.

Affirmed.

RUSSELL, Circuit Judge, dissents.

Rehearing denied; RUSSELL, Circuit Judge, dissents.

which the land herein leased or any part thereof is then unitized as herein provided. As used in this lease, drilling operations shall include any activity on the leased premises or on land with which the leased premises or any part thereof is then unitized in a good faith effort to obtain, increase, improve or reestablish production from such leased premises or unit; drilling operations shall be considered as being conducted in good faith

if not more than ninety (90) days are permitted to elapse between the cessation of production or drilling operations as herein defined on one well and the commencement of drilling operations on another well or hole upon the leased premises or on lands with which the leased premises or any part thereof is then unitized."

5. See also Humphrys v. Skelly Oil Co., 5 Cir., 83 F.2d 989, 991.