Christian R. HOLMES and William L. Dugger, Appellants,

v.

Albert D. McKNIGHT et al., Appellees.

No. 6.

Court of Civil Appeals of Texas.

Corpus Christi.

Dec. 5, 1963.

D. McKnight and others, hereafter "Mc-Knight", against appellants, William L. Dugger and Christian R. Holmes, hereafter "Dugger and Holmes", and from the refusal of the trial court to grant the motion for summary judgment of Dugger and Holmes. In the trial court, McKnight, his wife, and others claiming under him, that is, William H. McDonald, R. M. Bounds and Hazel Edwards were plaintiffs, and Dugger and Holmes were defendants.

McKnight brought this suit to establish ownership in certain overriding royalties and for collection of payments due him under an instrument dated September 19, 1959, hereafter referred to as the "extension agreement". The parties filed cross-motions for summary judgment, and the trial court sustained that of appellees and denied that of appellants. The judgment recites that there is no genuine issue of material fact, and this is conceded to be true by all parties on this appeal.

The judgment of the trial court allowed recovery to each appellee of an undivided interest in certain overriding royalties and for payments accruing to December 31, 1962, amounting to $5,108.37, plus interest.

We have concluded that the case was properly decided and the judgment should be affirmed.

All parties agree that the case turns upon the meaning of said extension agreement of September 19, 1959. Appellants contend that they had a right to terminate it in accordance with one of its provisions, and appellees say that the agreement is still in full force and effect. The instrument dated September 19, 1959, omitting detailed property descriptions and minor formal provisions not material to this appeal is set out below.[1]

E. G. Hall, of Strickland, Wilkins, Hall & Mills, Mission, for appellants.

L. C. McLean, of Kelley, Looney, McLean & Littleton, Cecil Edwards, Edinburg, R. M. Bounds, McAllen, W. H. McDonald, Pharr, for appellees.

SHARPE, Justice.

This is an appeal from a summary judgment rendered in favor of appellees, Albert

1. "THE STATE OF TEXAS
COUNTY OF HIDALGO
"WHEREAS, on the 15th day of July, A.D. 1958, Albert D. McKnight and wife Betty K. McKnight made, executed and delivered to A. W. Taylor, Trustee, a certain Oil, Gas and Mineral Lease, covering the following described land in Hidalgo County, Texas, hereinafter referred to as *McKnight Tract*, to wit: (here follows a metes and bounds description);
"WHEREAS, on September 25, 1958, the said A. W. Taylor, Trustee, made, executed and delivered an Oil and Gas Lease to Christian R. Holmes and Wil-

Appellants' first point is that the trial court erred in sustaining McKnight's motion for summary judgment and in denying that of Dugger and Holmes, because McKnight's right to receive the sums in question had automatically terminated in ac-

liam L. Dugger, covering the following described land in Hidalgo County, Texas, hereinafter referred to as *Citriana Tract*, to wit: (here follows a metes and bounds description);

"WHEREAS, the said Christian R. Holmes and William L. Dugger, thereafter acquired oil, gas and mineral leases on certain lands lying to the north and east of the land in the Citriana Tract, which said lands are more particularly described in the attached Exhibit 'A'; and,

"WHEREAS, production of oil and gas has since been obtained on the Citriana Tract, and the said Holmes and Dugger are committed to drill a further and additional well on the lands described in Exhibit 'A', to a depth of not less than 9500 feet or to commercial production, if encountered at a lesser depth; and,

"WHEREAS, Holmes and Dugger are desirous of perpetuating the McKnight lease without presently drilling on it;

"NOW, THEREFORE, it is agreed and understood as follows:

1. The said Albert D. McKnight and wife Betty K. McKnight hereby agree that the Oil, Gas and Mineral lease on the McKnight Tract shall be extended and perpetuated beyond the present date of termination and for so long and during such period of time as the said Albert D. McKnight and Betty K. McKnight shall be paid in the manner hereinafter set out, and Holmes and Dugger agree to make such payments in the manner hereinafter set out so long as oil, gas or other minerals are produced in paying quantities from the 'Citriana Tract', or from any of the lands described in Exhibit 'A'.

"(a) Christian R. Holmes and William L. Dugger do hereby Bargain, Sell, Convey and Assign unto Albert D. McKnight and Betty K. McKnight, hereinafter called Assignee, an overriding royalty equal to 1/96 of 8/8 of all oil which may be produced and saved by said Christian R. Holmes and William L. Dugger, their successors and assigns, from the 'Citriana Tract' or from any of the lands described in Exhibit 'A'; delivery of such oil to be made free of cost to the credit of said Assignee, their successors and assigns; into the pipe line or lines to which the well or wells on said premises may be connected. On gas, including casinghead gas, or other gaseous substance, sold or used off the premises or

in the manufacture of gasoline or other product therefrom, Assignee shall be paid the market value at the well of 1/96 of 8/8 of that so sold or used, provided that on gas sold at the wells the overriding royalty shall be 1/96 of 8/8 of the amount realized from such sale.

"The interest assigned shall be free of all cost of development, operating and maintaining such lease, but Assignee shall pay all taxes, including ad valorem, production and severance taxes, assessed against such interest, and a pro rata part of all expense incurred in treating and preparing the oil or gas for market.

"The said Albert D. McKnight and Betty K. McKnight shall be entitled to payment for their share of production from the Citriana well beginning as of July 1, 1959, and thereafter only and shall not be entitled to any interest in such production prior to that date; and such payments shall be made to them directly by the pipe line operators.

"In the event the said Christian R. Holmes and William L. Dugger, their successors or assigns, should fail to pay the overriding royalties as is hereinabove provided for a continuous period of six months, then on such date this agreement shall automatically terminate and be of no further force and effect and the McKnight lease shall terminate unless drilling or reworking operations are then in progress, in which event the lease shall remain in force so long as such operations are prosecuted with no cessation of more than 30 consecutive days, and in the event of production of oil, gas or other mineral so long thereafter as oil, gas or other mineral is produced.

"All payments herein provided to be paid shall be paid to the credit of Albert D. McKnight, Box 674, Pharr, Texas.

"Assignor agrees that it will not use the surface of the McKnight Tract and upon request the surface will be released provided however that Assignee shall not use or permit it to be used for drilling purposes so long as this agreement is in force and effect.

"This agreement shall be binding upon the parties, their executors, administrators, heirs and assigns.

"WITNESS the hands of the parties, this 19 day of September, A.D. 1959."
(Signatures and acknowledgments of Albert D. McKnight, Betty K. McKnight, Christian R. Holmes and William L. Dugger, Jr.)

cordance with the express written agreement of the parties. Appellants' second point is that the trial court erred in rendering judgment because, as a matter of law, Dugger and Holmes were not estopped nor had they waived their right to claim automatic termination of the obligation sued upon by McKnight.

Appellees contend that the trial court properly sustained their motion and urge nine counterpoints in support of their position, in substance, as follows: (1) Paragraph (a) of the agreement is an unconditional conveyance of royalties to appellees; (2) the alleged defense of forfeiture is not available to appellants; (3) when the instrument is construed as a whole, it defeats appellants' contention that the agreement is subject to forfeiture at the instance of appellants; (4) a forfeiture under the facts disclosed by the record in this case would be contrary to equity and good conscience; (5) appellants cannot plead and rely on their own failure to perform as a release of their obligation to perform; (6) a forfeiture by appellants would be contrary to the intent of the parties; (7) appellants are estopped under the facts to declare forfeiture; (8) appellants waived any right, if any such right ever existed, to declare the agreement forfeited; and (9) no construction of the agreement could be placed on it which requires the return of the consideration paid by appellants to secure its execution and delivery.

The record shows, and it is conceded by all parties, that there is production in paying quantities of oil and gas not only from the well on the Citriana Tract, but also from another well, known as the "Evans" well, located on one of the properties described in Exhibit "A" of the extension agreement, and that there has been a default by appellants in payment of overriding royalty to appellees for a period of six continuous months.

The controverting affidavit of William L. Dugger, Jr., attached to appellants' answer to appellees' motion for summary judgment, reflects the factual background of the case as follows: That the original lease with McKnight provided that his land should be unitized with other adjacent lands, but it developed that the McKnight leasehold could not be so unitized; the agreement of September 19, 1959, was entered into in order to perpetuate the McKnight lease without the necessity for drilling on the property covered by it; by the late fall and winter of 1959, field rules were instituted covering the McKnight lease, and another company successfully obtained an injunction against fracturing procedures in wells in the immediate vicinity, all of which made it economically unfeasible to drill the McKnight property; because of such factors, the engineers of Dugger and Holmes recommended that the McKnight lease be terminated and no sums were paid to perpetuate the same from and after the month of October, 1959; Dugger and Holmes received notice of the claim of W. H. McDonald by copy of letter dated December 12, 1959; the suit between McDonald and McKnight did not terminate until January 29, 1962; on March 17, 1962, after appellee McDonald made inquiry as to payment of royalties, Holmes and Dugger caused a release to be filed, having determined long before to allow the McKnight lease to terminate by non-payment of sums required to perpetuate same; the release was intended to become effective as of the expiration of six months from the date of payment of last royalty; had any of the appellees requested advice as to whether Holmes and Dugger would elect to continue the McKnight lease in force, Holmes and Dugger "would have acquainted them with our intentions in the matter."

The affidavit of L. C. McLean, attached to appellees' amended motion for summary judgment shows, in part, the following: He conducted the negotiations for appellees in connection with the agreement of September 19, 1959; prior to the execution of said agreement, he wrote a letter to appellants' attorneys on August 5, 1959, in which he suggested certain changes and confirma-

tion of the understanding and in which he commented concerning Exhibit "A" of the contract (which had been sent to him by a representative of Dugger and Holmes by letter of July 27, 1959); he also requested that Dugger and Holmes confirm that Exhibit "A" included all of their interests in the area, regardless of in whose name the same might be held; by letter of November 7, 1959, Dugger and Holmes furnished him a map of the City of Pharr containing markings as to certain leases and stating their intention as to the participation of McKnight in leases then held or to be acquired in the area.

The record further contains a series of letters during the period of time from December 12, 1959, to April 27, 1962, concerning demand for payment of royalties by William H. McDonald, who acquired his interest by conveyance from the McKnights. Letters from Dugger and Holmes and their representatives written during the month of January, 1960, reflect that they decided to withhold payments of royalty under the extension agreement of September 19, 1959, until such time as they were furnished with a joint instruction from the McKnights and McDonald concerning their respective royalty interests or a judgment of a court fixing the same. Such letters were consistent with recognition of the obligation to pay such overriding royalties so long as Dugger and Holmes could be certain that such payments were made to the right persons. There was nothing in such correspondence which would lead anyone to believe that Dugger and Holmes either had terminated, or intended to terminate, the McKnight lease or the extension agreement of September 19, 1959. McDonald and McKnight litigated their differences and a certified copy of the final judgment of February 27, 1962, fixing their interests, was furnished to the attorney for Dugger and Holmes. On March 17, 1962, McDonald made inquiry of Dugger and Holmes as to payments to him, and by letter of April 27, 1962 from an attorney for Dugger and Holmes was advised, along with the McKnights, that a release of the McKnight lease, delivered to him by Dugger and Holmes, had been recorded. Said release was dated March 20, 1960, was acknowledged on April 9, 1962, and was recorded on April 27, 1962, or thereafter.

Analysis of the extension agreement dated September 19, 1959, reflects the following: The contract includes twelve material paragraphs, the first five of which are "recital" provisions. The following seven paragraphs contain "agreement" provisions. The recital provisions set out the execution of the original lease; that appellants had acquired leases on the Citriana Tract and other lands lying to the north and east of it, described in Exhibit "A" of the contract; that production of oil and gas had been obtained on the Citriana Tract, and an additional well was to be drilled on the lands included in Exhibit "A"; that "Holmes and Dugger are desirous of perpetuating the McKnight lease without presently drilling on it." The agreement provisions set out that the original McKnight lease shall be extended and perpetuated beyond its termination date (which would have been July 14, 1960), and in Paragraph 1 there is an unconditional promise by Holmes and Dugger to make payments to the McKnights for "so long as oil, gas or other minerals are produced in paying quantities from the 'Citriana Tract', or from any of the lands described in Exhibit 'A'." Immediately following Paragraph 1, there is a paragraph designated (a) which contains an unconditional conveyance and assignment to appellees of overriding royalties on oil and gas produced and saved from said adjoining tracts. Aside from the termination clause, which we will discuss more fully hereafter, the remaining provisions cover delivery and payment to McKnight free of development and operation costs, except certain taxes and pro-rated expenses for treating and preparing the products for market, for payments to McKnight directly by the pipe line operators after July 1, 1959, the address to be used for payments to McKnight, and for non-user

of the surface of the McKnight tract and for release of the said surface under certain conditions.

The termination clause of the extension agreement provides, in substance, that in the event Dugger and Holmes should fail to pay the overriding royalties for a continuous period of six months "then on such date this agreement shall automatically terminate and be of no further force and effect and the McKnight lease shall terminate unless drilling or reworking operations are then in progress. . . ." It is this provision which appellants contend gives them a right to terminate the agreement of September 19, 1959, so that appellees would have no further rights except to collect the overriding royalty payments from the adjoining properties for a period of six months.

It must be kept in mind that in the original lease McKnight was grantor and appellants were grantees of the mineral estate on property owned by McKnight; and that McKnight's rights under said lease were extended and perpetuated by the extension agreement. In the extension agreement appellants were grantors and McKnight was grantee of overriding royalty from tracts owned by other persons on which appellants were lessees; and the conveyance of such royalty and the agreement to pay the same to McKnight constituted the consideration for the extension of the original McKnight lease.

Appellants concede that much difficulty in the decision of this appeal can be removed by a determination of the true nature of the extension agreement of September 19, 1959. It is apparent to us that it must be treated as a conveyance of an interest in land, particularly since the overriding royalty assigned to appellees is a part of the determinable fee owned by appellants as lessees of the adjoining tracts. Although a "fee simple" title is acquired by the lessee under an oil and gas lease in the sense that it might continue forever, such title is a "determinable fee" since it might come to an end upon certain contingencies, particularly where there is a cessation of use of the land for purposes of oil and gas exploration, development and production. McMahon v. Christmann, 157 Tex. 403, 303 S.W.2d 341, 304 S.W.2d 267 (1957); Knight v. Chicago Corporation, 144 Tex. 98, 188 S.W.2d 564 (1945); Sheffield v. Hogg, 124 Tex. 290, 77 S.W.2d 1021, 80 S.W.2d 741 (1934); Stanolind Oil & Gas Co., v. Barnhill, 107 S.W.2d 746, (Tex.Civ.App., 1937, err. ref.); Colquitt v. Eureka Producing Co., 63 S.W. 2d 1018, (Tex.Comm.App., 1933); Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.2d 27 (1929); Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S.W. 290, 29 A.L.R. 566 (1923).

The instrument in question must be considered as an entirety and each paragraph must be considered with reference to every other paragraph so that the effect of one on the other may be determined. It must be presumed that each provision was placed in it for a particular purpose and a construction which would render any provision meaningless should be avoided. Provisions which are in apparent conflict must be reconciled and harmonized whenever possible so that the instrument as a whole may be given effect. McBride v. Hutson, 157 Tex. 632, 306 S.W.2d 888 (1957); Woods v. Sims, 154 Tex. 59, 273 S.W.2d 617 (1955); Benge v. Scharbauer, 152 Tex. 447, 259 S.W.2d 166 (1953).

In seeking to arrive at the true intention of the parties we attach significance to the provisions of the extension agreement whereby appellants agreed unconditionally to make payments to appellees of overriding royalties from the adjoining tracts for so long as there is production in paying quantities from them; and that there was an unconditional conveyance and assignment to appellees of overriding royalties on the adjoining tracts; and that the purpose of the extension agreement, made well in advance of the expiration date of the original lease with McKnights, was that Holmes and Dugger were desirous of perpetuating the

McKnight lease without then drilling on it; that the other provisions as to payment and delivery, payment of taxes and pro-rated costs of preparation of the product for market, and payment to the McKnights directly by the pipe line operator, all are consistent with continued ownership of the overriding royalties from the adjoining tracts by the McKnights and inconsistent with termination at the sole option of appellants.

The nature of appellees' overriding royalty interest cannot seriously be questioned since the same is definitely fixed by the extension agreement. The controlling issue relates to when and how such interest might be terminated.

The contingency that there may be a cessation of production of oil and gas in paying quantities on the adjoining tracts and a consequent failure to pay overriding royalty is not here involved because such event has not taken place and such special limitation is, therefore, not operative. The question as to right of termination then narrows to the contingency that appellants shall fail to pay the overriding royalty for a period of six continuous months.

■ We hold that the termination clause does not create a special limitation but is no more than a condition subsequent. The occurrence of such condition subsequent would not produce an automatic termination of the extension agreement and the McKnight lease, but would confer only a power to terminate the same, which would exist solely for the benefit of appellees. The event which would make the termination clause operative, i. e., a six months default by appellants of their obligation to pay the specified overriding royalty, is solely within the control of appellants and would be a consequence of breach of duty imposed upon them by the agreement. In our opinion, it would not be proper to impute to the parties an intent to make such event operate to defeat or to permit termination of the royalty estate granted by appellants to appellees, either automatically or at the elec-

tion of appellants. To so construe the extension agreement would be to permit appellants to discharge their obligation to make the specified payments of royalty because of their own default and breach of express provisions and duties. Texlouana Producing & Refining Company v. Wall, 257 S.W. 875, (Tex.Comm.App., 1924); Golden West Oil Co. No. 1 v. Golden Rod Oil Co., 285 S.W. 631, (Tex.Civ.App., 1926), affirmed, 293 S.W. 167, (Tex.Comm. App., 1927); Cotherman v. Oriental Oil Co., 272 S.W. 616, (Tex.Civ.App., 1925, no writ history); Stovall v. Texas Co., 262 S. W. 152, (Tex.Civ.App., 1924, writ refused); Empire Gas & Fuel Co. v. Pendar, 244 S.W. 184, (Tex.Civ.App., 1922, d. w. j.); Clemenger v. Flesher, 185 S.W. 304, (Tex. Civ.App., 1916, writ refused); Knight v. Chicago Corporation, 183 S.W.2d 666, (Tex. Civ.App., 1944), affirmed on other grounds, 144 Tex. 98, 188 S.W.2d 564 (1945); James Stewart & Co. v. Law, 228 S.W.2d 601 (Tex.Civ.App., 1950), affirmed 149 Tex. 392, 233 S.W.2d 558, 22 A.L.R.2d 639 (1950); The Nature of the Property Interests Created by an Oil & Gas Lease in Texas, 7 Texas Law Review 1, 17; 8 Texas Law Review 483, 488, 489, (A. W. Walker, Jr.).

We find that the termination clause, properly construed, evidences an intent of the parties that the six month default therein mentioned should be a condition subsequent annexed to the grant of mineral leasehold rights from McKnight to appellants, entitling appellees, at their option, to terminate such rights upon the occurrence of such event. Obviously, appellees have not elected to terminate, but, instead, have affirmed the contract and brought this suit.

The termination clause of the extension agreement is not a special limitation; neither is it a condition subsequent which operates in favor of appellants so as to authorize termination by them; and there is no clear and unambiguous provision in the extension agreement which would make available to appellants a right or defense of

**548**

forfeiture under the conditions shown by the record herein. Link v. Texas Pharmacal Company, 276 S.W.2d 903, (Tex.Civ. App., 1955, no writ history); Knight v. Chicago Corporation, 144 Tex. 98, 188 S.W. 2d 564 (1945); Ryan v. Kent, 36 S.W.2d 1007, (Tex.Comm.App., 1931); Waggoner Estate v. Sigler Oil Company, 118 Tex. 509, 19 S.W.2d 27 (1929); Decker v. Kirlicks, 110 Tex. 90, 216 S.W. 385, (1919); Mound Company v. Texas Company, 298 F.2d 905 (5th Cir. 1962); West v. Continental Oil Co., 91 F.Supp. 505 (D.C.Tex.1950), affirmed, 194 F.2d 869 (5th Cir. 1952).

The construction of the extension agreement contended for by appellants would allow them to terminate the original McKnight lease, as well as the extension agreement, some four months prior to the expiration date fixed in the said original lease. Such result would be directly contrary to the expressed desire of Dugger & Holmes of "perpetuating the McKnight lease without presently drilling on it" and would also be directly contrary to appellants' express agreement that the lease on the McKnight tract "shall be extended and perpetuated beyond the present date of termination * * *", and, in our opinion, would not be reasonable.

Under the construction we have placed on the extension agreement of September 19, 1959, when it is considered as a whole, there is no real conflict between the termination clause and its other provisions. Each and all of said provisions can be harmonized and a construction which would make any provision meaningless is avoided. We believe that the conclusions reached by us reflect the real intent of the parties when they entered into the extension agreement.

The foregoing holdings make unnecessary a discussion of the estoppel and waiver contentions heretofore mentioned. Since appellees have a right to the ownership of the overriding royalties and to the payments in question, there is no necessity for them to place reliance upon either of such theories.

The judgment of the trial court, granting appellees motion for summary judgment, is necessarily based upon the premise that the original McKnight lease and the agreement of September 19, 1959, continue in full force and that appellants' attempted termination of same was ineffective. We are in agreement with such premise and the actions of the trial judge in sustaining the motion for summary judgment filed by appellees and in denying that of appellants.

Affirmed.