Steven E. CALHOUN, et al., Appellant,

v.

Venetta June KILLIAN, Appellee.

No. 12–93–00251–CV.

Court of Appeals of Texas, Tyler.

Aug. 30, 1994.

Rehearing Overruled Nov. 30, 1994.

Steven D. Goldston, Dallas, Randall J. Cook, Tyler, for appellant.

Thomas H. Buchanan, Tyler, for appellee.

RAMEY, Chief Justice.

Appellants, Steven E. Calhoun and twelve others, appeal the rendition of a summary judgment in favor of Appellees, Venetta June Killian and Wynne & Wynne, in a dispute over the disposition of property under the

last will of Hallie J. Courtney ("Courtney"). We will reverse the summary judgment and remand to the trial court for further proceedings.

## BACKGROUND FACTS

Courtney died on March 9, 1978. At the time of her death she owned, among other property, some 349 acres of unimproved ranch land lying north of Highway 64 in Smith County Texas ("the ranch land") and an undivided one-half mineral interest in two separate tracts of property ("the mineral interests").[1] There was also in effect, at the time of her death, an instrument which both leased the ranch land to Glenn L. and Venetta June Killian, and devised certain land to them in the event Courtney died before the end of the term of the lease (the "lease/will"). The portions of the lease/will relevant to this controversy read as follows:

I, Hallie Jackson Courtney, ... do hereby lease to the said Glenn L. Killian and wife Venetta June Killian the following described land:

And being the land owned by Hallie Jackson Courtney in Smith County, Texas, and

Being 200 acres, more or less, in B. Kukendall survey, A–532;

and being 50.6 acres, more or less in the Benjamin J. Kukendall Survey, A–531;

And being 18.9 acres, more or less, in the Abraham Booth Survey, A–148;

And being 79.5 acres, more or less, in Joseph Del Survey, A–297, which lies north of State Highway 64;

And that part out of the NE corner of William F. McClure Survey, A–647 which lies north of State Highway 64.

This is to include all of the land owned by Hallie Jackson Courtney in Smith County, Texas, which lies north of State Highway 64.

for agricultural purposes for a term of five (5) years....

.    .    .    .    .

If during the term of said lease the said Hallie Jackson Courtney should die, then and in that event, a fee simple title shall vest in the said Glenn L. Killian and wife Venetta June Killian to all of the property described above.

It being the will of said Hattie Jackson Courtney that title to said property vest in the said Glenn L. Killian and wife Venetta June Killian at her death.

The lease/will was probated in Van Zandt County, and Glenn Killian was appointed administrator of Courtney's estate. In his First Amended Account for Final Settlement, filed in February, 1986, he identified the mineral interests as "remaining on hand" and provided a list of heirs "entitled to receive the property remaining on hand." Glenn Killian died before the present action was filed.

This action was brought by the heirs of Courtney, and their assigns and successors, (collectively, "Calhoun"), seeking a declaratory judgment to remove any cloud on title to the mineral interests. Named as defendants were Venetta June Killian, Individually and as Independent Executrix of the Estate of Glenn L. Killian, and an assignee of the Killians, Wynne & Wynne, a partnership (collectively, "Killian").[2] Both Killian and Calhoun filed motions for summary judgment. The trial court granted Killian's motion and denied those filed by Calhoun, holding that the language of the lease/will operated to devise title to the mineral interests to Killian. Calhoun brings four points of error in this appeal, one asserting generally that the trial court was in error for granting Killian's summary judgment, two complaining of more specific conclusions by the trial court, and one asserting error in the trial court's refusal to grant its own summary judgment motion.

---

1. Courtney owned mineral interests both north and south of Highway 64 in Smith County, but it is undisputed that those lying to the south passed by intestacy to Courtney's heirs. The term "the mineral interests," as used in this opinion, shall therefore be confined to those disputed mineral interests north of Highway 64.

2. References to the Killians individually will hereafter be to "Glenn Killian" or "Venetta Killian." Otherwise the name "Killian," standing alone, will refer collectively to the Defendants/Appellees.

## The Meaning and Construction of the Lease/Will

The recognized standard for reviewing a grant of summary judgment is as follows:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.
2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.
3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management,* 690 S.W.2d 546, 548–49 (Tex.1985). If, as here, both parties have moved for summary judgment, a reviewing court may determine all questions presented; it may affirm the summary judgment entered, reverse and render a judgment for the other party, if appropriate, or reverse and remand if neither party has met its summary judgment burden. *Al's Formal Wear of Houston, Inc. v. Sun,* 869 S.W.2d 442, 444 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

If a written document is ambiguous, it cannot support a summary judgment, since its meaning raises a fact issue, even if the parties fail to allege such ambiguity. *Gaulden v. Johnson,* 801 S.W.2d 561, 565 (Tex.App.—Dallas 1990, writ denied). Likewise, when a will is ambiguous, courts must consider the circumstances surrounding its execution and other extraneous evidence going to the testator's intent. *Estate of Cohorn,* 622 S.W.2d 486, 488 (Tex.App.—Eastland 1981, writ ref'd, n.r.e.). A will is ambiguous and not susceptible to construction by summary judgment only when the language used is susceptible to more than one interpretation. *Barker v. Rosenthal,* 875 S.W.2d 779, 781 (Tex.App.—Houston [1st Dist] 1994, no writ).

In the present case the lease/will is susceptible to either of the interpretations urged by Calhoun and Killian. The ambiguity lies in the sentence following the description of the various parcels by acreage and survey: "This is to include all of the land owned by Hallie Jackson Courtney in Smith County, Texas, which lies north of State Highway 64." The phrase "This is to include . . ." may be understood as *limiting* the conveyance to the described land, or as *comprehending* all *other* land north of such highway, regardless of whether foredescribed. If meant to limit, the mineral interests go to Calhoun; if meant to add, they go to Killian.

Both Calhoun and Killian insist that this ambiguity can be resolved by reference to certain accepted canons of construction. Calhoun rightly asserts that "[t]he foremost objective in construing a will is to ascertain the testatrix's intent." *Barker v. Rosenthal,* 875 S.W.2d 779, 781 (Tex.App.—Houston [1st Dist.] 1994, no writ). But "[i]ntent should be determined by the four corners of the instrument based on the express language chosen by the testatrix." *Ibid.* Though the uncommon combination of lease and will may suggest that Courtney's intent was to devise only what was actually capable of agricultural use, we cannot say that the four corners of the document establish such intent as a matter of law.

Calhoun appeals to what he calls the rule of practical construction, that the meaning of a document can be ascertained with reference to a party's conduct and his own apparent understanding of disputed terms. Here Killian, until a substantial time after Courtney's death, had no knowledge of the existence of the mineral interests, made no claim to them, and affirmatively stated that they belonged to Courtney's heirs. Calhoun argues that such ignorance and course of conduct conclusively precludes a finding that the lease/will was intended to cover such estates. But the cases cited by Calhoun in support of this proposition do no more than affirm that evidence of conduct surrounding a negotiated conveyance may be probative of the parties' intent when the terms of the conveyance are ambiguous. They do not stand for the proposition that a *testatrix's* intent may be established with reference to her *beneficiary's* understanding of the scope of the devise. Such evidence may be relevant, but it is not decisive.

Killian agrees that the testatrix's intent is paramount, but argues that the lease/will, by its terms, devises all real property north of highway 64, including the severed mineral interests which, Killian concedes, were never the subject of the grazing lease. A conveyance of "land" within a certain area has been held to include severed mineral estates within the area. *Holloway's Unknown Heirs v. Whatley*, 131 S.W.2d 89, 92 (Tex.Comm.App. 1939, opinion adopted). But the question for decision here is not whether the disputed mineral interests are "land," but whether Courtney intended, by adding the disputed language, to devise significantly more "land" to Killian than the acreage intended for use as ranch land.

Killian argues from the will's direction that "a fee simple title shall vest in [Killian] to all of the property described above" that Courtney's intent was to give the devise the greatest scope possible. Killian is correct that a fee simple absolute constitutes the full panoply of rights in real property, as opposed to the more limited estates carved out of the fee simple. But Courtney's intention to devise the full, unlimited right to "the property described above," as opposed to the limited leasehold to such property "for agricultural purposes," fails to resolve the central question of whether "the property described above" includes the mineral interests. The quality of the estate devised does not identify which estates are intended to be included in the devise.[3]

Killian also appeals to the presumption against intestacy, arguing that construing the lease/will to include and devise title to the mineral interests operates to minimize the disfavored intestacy. But "[t]he presumption against partial intestacy arises only when the intention to pass the whole estate is expressed...." *Alviar v. Gonzalez*, 725 S.W.2d 297, 299 (Tex.App.—Corpus Christi 1986, writ ref'd, n.r.e.). As this document did not dispose of Courtney's entire estate, the presumption is inapplicable. The ambiguity of the lease/will is thus not cured by the interpretive presumptions raised by the parties.

## ESTOPPEL

■ Calhoun additionally asserts that the summary judgment was erroneous because Killian is judicially or equitably estopped from asserting any claim to the mineral estate. This contention is based on Glenn Killian's listing of the mineral estate as "remaining on hand" in his First Amended Account for Final Settlement, along with the list of heirs "entitled to receive the property remaining on hand." Whatever the strength of this argument, we are satisfied that Calhoun has not established estoppel as a matter of law. Killian has presented summary judgment evidence that his identification of the mineral estate as outside of the terms of the lease/will was a mistake. Judicial estoppel is not established if the relevant assertion is made inadvertently or mistakenly. *Owen v. Knop*, 853 S.W.2d 638, 641 (Tex.App.—Corpus Christi 1993, writ denied). And one of the elements of equitable estoppel is that the assertion complained of be "made by a party with knowledge of the facts." *New Braunfels Factory Outlet v. IHOP*, 872 S.W.2d 303, 307 (Tex.App.—Austin 1994, no writ). The factual question of whether Glenn Killian was mistaken prevents summary relief on either theory of estoppel—judicial or equitable.

■ Summary judgment is also precluded by the question of whether Calhoun and his successors and assigns justifiably relied on Glenn Killian's representations. A court's approval of an accounting makes no express determination of title to property in the estate. *Balaban v. Balaban*, 712 S.W.2d 775, 780 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd, n.r.e.). Calhoun rightly argues that any transactions entered into by Killian with third parties subsequent to the closing of the estate would not have appeared in his chain of title. It has not been argued, and we do

---

3. It is common practice in Texas to refer to fee simple title in a mineral estate or fee simple title to a surface estate. *See Halbert v. Upper Neches River Municipal Water Authority*, 367 S.W.2d 879, 885 (Tex.Civ.App.—Houston 1963, writ ref'd, n.r.e.). Nevertheless, a mineral estate is, strictly speaking, only a part of the whole set of rights in a parcel of real property, and is, typically, a "determinable fee," subject to termination upon the cessation of mineral production. *Holmes v. McKnight*, 373 S.W.2d 541, 546 (Tex. Civ.App.—Corpus Christi 1963, no writ).

56

not address the question whether the ambiguous terms of the lease/will should have put purchasers from the heirs on notice of a possible adverse claim by Killian.

Furthermore, Venetta Killian's claim to the disputed mineral estates rests only partly on her status as successor-in-interest to her husband Glenn Killian. Though Glen Killian could not, of course, assign or devise a greater interest than that which he himself had in the property, Venetta Killian's interests derive, not only from her deceased husband's estate, but also from a direct devise by Courtney. As to such interest, Calhoun suggests no reason that Venetta Killian should be estopped by her husband's statements.[4]

### CONCLUSION

We thus conclude

(1) that the lease/will is ambiguous with respect to whether the testatrix intended to devise the mineral interests to Killian,

(2) that the rules of construction normally applicable to the interpretation of wills fail to conclusively establish one or the other of the conflicting interpretations of the parties, and

(3) that the record before us fails to establish estoppel against Killian as a matter of law.

We therefore sustain Calhoun's first point of error, that the trial court erred in granting Killian's motion for summary judgment, and overrule Calhoun's fourth point of error, that the trial court erred in overruling Calhoun's cross-motion for summary judgment. We need not reach the matters raised in the second and third points of error, based on our disposition of the first and fourth points. Neither party was entitled to prevail on summary judgment. Because of the factual issues precluding summary judgment for either party, we reverse the judgment entered by the trial court and remand the action for

further proceedings not inconsistent with this opinion.

BILL BASS, J., not participating.

---

4. This is also true of the interest claimed by Wynne & Wynne, to the extent that its assignment is traceable to Venetta, and not to Glenn.